HEIVELY ET AL. v. MATTESON ET AL.

1. **Mortgage**: LIEN OF: CHANGE IN FORM OF INDEBTEDNESS. The
fact that the original notes secured by a mortgage have been surrendered
and other forms of indebtedness taken in their stead will not, as between
the parties, while the original indebtedness still subsists, deprive the
creditor of the security of the mortgage.

2. ——: ——: SUBSEQUENT MORTGAGEE. Evidence considered under
which it was held that one taking a second mortgage was chargeable
with notice that a portion of the indebtedness secured by a prior mort-
gage, the original notes representing which had been surrendered, was
still unpaid, and that the second mortgage was subject to the lien of
such prior incumbrance.

*Appeal from Winneshiek Circuit Court.*

THURSDAY, OCTOBER 7.

THIS is an action to recover from Ammon, Greer & Co.,
Ammon, Scott & Co., George W. Scott and John Ammon,
the amount of several promissory notes, to foreclose a mort-
gage executed to secure said notes, and to declare the lien of
the mortgage paramount to the lien of a subsequent mortgage
executed to C. E. Dickerman, and by him assigned to S. W.
Matteson. The court granted the relief prayed by the plain-
tiffs. The defendants S. W. Matteson and C. E. Dickerman
appeal. The facts are stated in the opinion.

*Brown & Wellington* and *Willett & Willett*, for appel-
lants.

*L. Bullis*, for appellees.

DAY, J.—I. On the 4th day of May, 1870, the plaintiffs
conveyed to Ammon, Greer & Co., a duly incorporated com-
pany, certain premises known as the mill property.
In consideration of this conveyance Ammon,
Greer & Co. executed to the plaintiffs nine prom-

*1. MORTGAGE: lien of: change in form of indebtedness.*

issory notes; two for $2,500 each, payable in one and two years respectively, with interest at the rate of ten per cent; six for $2,500 each, payable in three, four, five, six, seven and eight years respectively, with interest at the rate of eight per cent; and one for $2,000, payable in nine years, with interest at eight per cent. The interest on all these notes was payable annually. To secure these notes Ammon, Greer & Co., on the 5th of May, 1870, executed to the plaintiffs a mortgage upon the premises conveyed. Afterward the corporate name of Ammon, Greer & Co. was changed to Ammon, Scott & Co. The notes due in one and two years have been paid. The plaintiffs have possession of the three notes due in seven, eight and nine years. No question is made as to the right of the plaintiffs to the relief demanded as to these notes. The whole controversy arises over the notes due in three, four, five and six years. Across the face of the notes due in five and six years, respectively, was written the following: "The rate of interest on this note to be ten per cent from May 2, 1875, until paid." All of these four notes are in the possession of the defendant Ammon, Scott & Co. On the face of the note payable in three years is written: "Paid May 3, 1873," and on the back thereof the following: "Received payment in full, May 3, 1873. Henry Heively." On the face of the note payable in four years is written: "Paid May 27, 1874," and on the back thereof the following: "Received payment May 27, 1874. Henry Heively." On the face of the note payable in five years is written: "Paid May 1, 1876," and on the back thereof is indorsed the name of "Henry Heively." The same writing appears upon the face, and indorsement upon the back, of the note payable in six years. The only manner in which these notes were paid was as follows:

1. The note due in three years was given up by plaintiffs, and a note therefor, and for the interest due on the notes, was executed May 3, 1873, by Ammon, Scott & Co., for $3,860, payable on demand, with interest at ten per cent and attorney's fees.

2. The above note and the note due in four years were surrendered, canceled and marked paid, and two demand notes were executed to Henry Heively by Ammon, Greer & Co., with interest at ten per cent payable semi-annually, and attorney's fees. One of these notes was for the sum of $6,000.00, and the other for the sum of $1,555.39.

3. On the 18th day of December, 1874, these two demand notes were surrendered, and a receipt of payment indorsed on the back, and for the same Ammon, Scott & Co. executed to Henry Heively a demand note for $6,825.23, with interest at ten per cent payable semi-annually and attorney's fees.

4. On the 7th of May, 1875, the foregoing demand note, and also the note for $2,500 payable in five years, were surrendered and canceled, and for them Ammon, Scott & Co. executed to Henry Heively their demand note for $6,993.93, with interest at ten per cent payable semi-annually and attorney's fees.

5. On the 4th of May, 1876, the above demand note, and the note for $2,500 payable in six years were given up and canceled, and in lieu thereof were executed by Ammon, Scott & Co., a note for $1,000, payable to Emma Gaston, one certificate of deposit No. 673, for $4,000.00, one certificate of deposit No. 674, for $2,436.54, and one certificate of deposit No. 675, for $2,437.54, all payable to Henry Heively, with interest at ten per cent, payable semi-annually. The note to Emma Gaston was subsequently taken up and a certificate of deposit given to her therefor.

6. Certificate of deposit 674 was subsequently surrendered and canceled, and on May 4, 1877, certificate of deposit No. 858, for $4,894.89, with interest at ten per cent, was executed by Ammon, Scott & Co. to Henry Heively therefor.

7. On the 3d of May, 1878, certificates of deposit No's 673, 675 and 858 were surrendered and canceled, and certificates of deposit No's 997, 998 and 999, were given therefor. These are the certificates of deposit set out in the plaintiffs'

petition, and upon which recovery is sought.   They are all alike except as to amount and time of payment.

The following is a copy of No. 997.

"Office of Decorah Agricultural Works }
              and Flouring Mills.                    }
     "Ammon, Scott & Co., Proprietors.    }

"No. 997.                    Decorah, Iowa, May 3, 1878.

"Henry Heively has deposited in this office $1,114.12, payable to his order, on demand, after date, on return of this certificate, with interest 'from date, until paid, at the rate of ten per cent per annum.

"Ammon, Scott & Co.,
per Geo. W. Scott, *Secretary*."

On the back of said instrument is the following indorsement, viz:

"For value veceived we hereby guarantee payment of the within note, and waive demand, notice and protest.

"George W. Scott,
"John Ammon."

No. 998 is for the sum of $2,000, payable eighteen months after date.   No. 999 is for the sum of $4,728.24, payable thirty months after date.   The guarantors of these certificates, George W. Scott is secretary, and John Ammon is president, of Ammon, Scott & Company.   It thus appears that, although the original indebtedness represented by the notes maturing in three, four, five and six years, has several times changed its form, it has never in fact been paid.   One evidence of indebtedness has simply been surrendered and canceled, and another substituted in its place.   It does not appear that there was any intention that any of the various evidences of indebtedness should be received in satisfaction of the debt. Henry Heively, one of the plaintiffs, testifies as follows: "The three certificates are the property of myself and my wife. *   *   *   The consideration of them was the mill prop-

erty described in the mortgage; they are part of the mortgage debt. I have frequently surrendered the original notes. described in the mortgage, and taken new ones in place of them; and did so in these certificates. The consideration in these certificates is the same as in the notes in the original mortgage. I never loaned Ammon, Scott & Co., or Ammon, Greer & Co., one dollar in my life; I never deposited a dollar with them.   *   *   *   These certificates came to be made in this wise: The mortgage interest due, and notes past due, were settled up, time extended, and new notes taken for the amounts due. The notes not due, the interest was figured and included in the new notes, and they were allowed to stand. In receiving the new notes I gave the old ones up, thinking it was all right, and that it would be the same debt, and would run upon the property all the time. There was no agreement, whatever, made about the mortgage being discharged, or any part of it. Mr. Scott drew the notes as they wanted them, and I took it for granted that they meant that they were a lien upon the property under the old mortgage. I took them for a renewal of the mortgage note; extended the time on them. They were made because interest and some of the notes were due, and they wanted the time extended."

G. W. Scott, secretary of Ammon, Scott & Co., testifies: " I know the certificates in question. These certificates were given in exchange for notes that were secured in the mortgage. The notes in the mortgage fell due, and were lifted, and these were put in and substituted. There was no other consideration than that; there was no money deposited; they indicate that there was, but they were given for notes described in the mortgage that fell due. Henry Heively simply surrendered the notes, and these were put in the place of them."

John Ammon testified: " The mortgage in question was given to secure the purchase-money of the property described in it. The three certificates held by plaintiff is the same

debt described in the mortgage. The debt evidenced by these certificates is not paid. There was never at any time an agreement that the mortgage should be paid as to these certificates. New notes or certificates were given for the old notes, and the new were, of course, for the old debt. I supposed these certificates were notes. His demands on the notes, as they became due, were satisfied by partial payments of money, and the balance in new notes in place of the old ones."

In view of the testimony, and all the circumstances of the case, it is very plain that, as between the debtor and creditor, the debt still subsists, is unsatisfied, and the mortgage stands as security for it. The following authorities establish this proposition most conclusively: *Bolles v. Chauncey*, 8 Conn., 389; *Funk v. Branch*, 16 Conn., 259; *Brinkerhoff v. Lansing*, 4 Johnson's Ch., 65; *Yobey v. Barber*, 5 Johns., 68; *Watkins v. Hill*, 8 Pick., 522; *Pomeroy v. Rice*, 16 Pick., 22; *Cole v. Gackett*, 1 Hill, 516; *Putman v. Lewis*, 8 Johns., 389; *Johnson v. Weed*, 9 Johns., 310; *Flower v. Ellwood*, 66 Ill., 438; 2 Am. Leading Cases, p. 245, *et seq.*; *Paine v. Vorhees*, 26 Wis., 526; 2 Jones on Mortgages, Sec. 924, and cases cited; *Sloan v. Rice*, 41 Iowa, 465; *Farwell v. Grier*, 38 Iowa, 83; *Port v. Robbins*, 35 Iowa, 208; *Farwell v. Salpaugh*, 32 Iowa, 582; *Packard v. Kingman*, 11 Iowa, 219.

II.  The question next to be considered is, how does the change in the form of the debt affect the subsequent mortgagee. In July, 1878, after the four notes in question were surrendered to Ammon, Scott & Co., and substituted by other evidences of indebtedness, the defendant Dickerman obtained from Ammon, Scott & Co. a mortgage upon the same property to secure the sum of $20,-000. Dickerman was a stockholder in said corporations from April, 1873, to July, 1878. He was a director in said corporations from March, 1874, to April 1878. Just before he received the mortgage he transferred his stock to his wife.

2. ——: ——: subsequent mortgagee.

The consideration for the mortgage was the surrender of several usurious notes which he held against the corporation, and $9,379.54, which he paid in cash.

He was shown the four notes due in three, four, five and six years, which were in the hands of Ammon, Scott & Co., with the receipt of plaintiff thereon. He testifies he was told by Scott, secretary of the company, that there was a balance of $7,000 due the plaintiff, and that he advanced money to the corporation, and took the mortgage, with the understanding that only that amount was due. At the same time he testifies as follows: "The books of the corporation were shown to me, containing an account of the payment of these mortgage notes, and these books were shown for the purpose above stated. I think I do remember of seeing or being informed in relation to other notes and certificates of deposit at the time; and I was informed that some of the notes were taken up and subsequent certificates issued. I am not distinct about the payment; my recollection is they satisfied me these notes had been paid. The others I am not so clear about. In making that loan I relied upon the information I then and there obtained." Being a director of the corporation during nearly the whole time that the various changes in the form of the indebtedness were being made, he cannot be presumed to be ignorant of the real nature of that transaction. Besides, being informed that some of the notes were taken up and certificates issued, he was put upon inquiry, and should have ascertained the condition of the indebtedness before he advanced his money. The following authorities are directly in point: *Bolles v. Chauncey*, 8 Conn., 390; *Funk v. Branch*, 16 Conn., 274; *Pomeroy v. Rice*, 16 Pick., 22; 2 Jones on Mortgages, Sec. 927. We are of opinion that Dickerman acquired no right paramount to those of the plaintiffs.

III. The only remaining question is, how far is Matteson, the assignee of Dickerman, to be protected? Matteson is the brother-in-law of Dickerman, and does business with him in

the same room. On the 17th of April, 1879, Matteson took an assignment of the notes to Dickerman, and the mortgage securing them. He paid nothing down. He executed his own notes for the amount, running about the same length of time as the notes he purchased, but at a less rate of interest, and gave no security. It does not appear that he has ever paid anything on the notes. He testifies that he does not know whether he is a defendant or not, and Dickerman testifies that he has indirectly a personal interest in the suit, and has partially employed attorneys. We feel satisfied from the evidence that the assignment was not *bona fide*, and that he is not entitled to protection. The decree is

ＡＦＦＩＲＭＥＤ.