[No. 2866. Decided December 12, 1898.]

STRAW-ELLSWORTH MANUFACTURING COMPANY *et al.,*
*Respondents,* v. JAMES CAIN *et al., Respondents,*
BLAINE NATIONAL BANK, *Appellant.*

FRAUDULENT CONVEYANCES—BADGES OF FRAUD—CHAMPERTY—RE-
NEWAL NOTES—EFFECT ON SECURITIES—CONTINUANCE.

A conveyance fair upon its face, but alleged to be fraudulent
as against creditors, will not be set aside upon the uncor-
roborated testimony of the grantor that it was given with
fraudulent intent.

The existence of one or more badges of fraud is not suffi-
cient to invalidate a written instrument, where, in view of all
the circumstances, it is apparent that fraud was not intended.

A champertous contract can be set up as a defense only in
an action in which the agreement itself is sought to be enforced.

The fact that notes secured by mortgage are superseded by
renewal notes would not affect the securities held by the secured
creditor as against subsequent judgment creditors.

In a suit to set aside a deed and mortgages to a bank, the
bank was entitled to a continuance for the purpose of taking

depositions, on the ground of surprise, of former officers of the bank, who had since become non-residents, when it appeared that defendant had been informed by one of the grantors, prior to trial, that he would testify to the *bona fides* of the transactions, but that on the trial his testimony was that the instruments had been given for the purpose of defrauding creditors.

Appeal from Superior Court, Whatcom County.—Hon. JESSE P. HOUSER, Judge. Reversed.

*Black & Leaming,* for appellants.

*Thomas Payne (Ballinger, Ronald & Battle,* of counsel), for respondents.

The opinion of the court was delivered by

ANDERS, J.—On and prior to May 4, 1892, the firm of Cain Brothers, consisting of George, James and Cornelius Cain, were indebted to the appellant, the Blaine National Bank, in the sum of $5,000 or more. This indebtedness was evidenced by short time promissory notes, which had been renewed from time to time, and which were secured by a deposit in the bank of certain notes of various persons in favor of Cain Brothers, and certain school district warrants, and also certain warrants of the city of Blaine. On said day said James Cain, by a general warranty deed, conveyed to E. R. Wheeler, then cashier of the bank, certain real estate, the title to which stood in his name, although belonging in fact to the firm of Cain Brothers, consisting principally of town lots, but in which was included block 34 of the tide lands in front of the city of Blaine, the title to which was in the state. Upon this tide land was situated a saw-mill, which was owned and operated by Cain Brothers. According to the testimony of George Cain, the parties to this conveyance were uncertain as to whether the mill should be considered real estate or personal property, and it was therefore concluded to execute a chattel mortgage upon the mill and machinery

in order to provide against the contingency of the mill being held to be personal property. Such a mortgage was, therefore, executed and delivered to the bank, and both the deed and the chattel mortgage were duly recorded on the following day. At the time the deed was executed the following written instrument was signed by the said E. R. Wheeler and delivered to the said James Cain:

" Whereas, James Cain has this day conveyed and transferred to the undersigned E. R. Wheeler certain real estate described in a certain warranty deed, of this date, described as follows: Block No. Fourteen (14) and lots Twenty One (21) and Twenty Two (22), Block Twenty Eight (28), in Cain's Original Townsite, and Lots One (1), Two (2), Three (3) and Four (4) in Blk. Two (2) in Cain's Water Front Add. to Blaine, and Blk. 34 of Tidal Lands, as shown by map thereof; said conveyance being for the purpose of securing the payment to the Blaine National Bank or assignees, of any indebtedness due said bank; and it is hereby agreed that when said indebtedness shall be fully paid in accordance with the letter thereof then the said E. R. Wheeler agrees to reconvey the above described property to said grantor but not otherwise."

This instrument was witnessed by Albert E. Mead, attorney for the bank, and George W. Cain, but does not appear to have been placed of record. On June 23, 1892, the Cains made a second chattel mortgage to the bank, covering the machinery which had been placed in the mill subsequently to the execution of the first chattel mortgage; and on December 29, 1892, they made, executed and delivered to the bank another chattel mortgage covering machinery which had been put into the mill, and was not included in the other mortgages, and also, as it appears, all other machinery therein at that time. On December 6, 1892, the respondent Straw-Ellsworth Manufacturing Company recovered a judgment against Cain Brothers

23—20 WASH.

in the superior court of Whatcom county, and on January 12 following, the respondent David Adler & Sons Clothing Company also recovered a judgment against Cain Brothers. On September 27, 1895, execution was issued upon these judgments and returned unsatisfied by the sheriff, under the direction of counsel for the plaintiffs in those cases. Subsequently these two execution plaintiffs brought this action to set aside the deed and chattel mortgages above mentioned and to subject the property therein described to the payment of their respective judgments. A trial was had by the court, and findings of fact and conclusions of law made and filed, and a decree entered annulling and setting aside the deed and mortgages, and ordering the property included therein sold and the proceeds applied, first, to the payment of the judgment in favor of Straw-Ellsworth Manufacturing Company, and, second, in payment of David Adler & Sons Clothing Company's judgment. Exceptions were duly taken to the findings of fact, conclusions of law and the judgment of the court, and the Blaine National Bank has brought the case here for review by appeal.

Although several errors are assigned and relied on by the appellant as grounds for reversal of the judgment, the principal question, in our view of the case, is whether the bank took the deed and mortgages in good faith for the purpose of securing the payment of the money loaned by it to the Cains, or whether these instruments were given by the Cains and received by the bank, with intent to hinder, delay or defraud the creditors of Cain Brothers. As this is a case of equitable cognizance, it was incumbent upon this court to examine the evidence *de novo* pertaining to the question of good or bad faith in the giving and receiving of the instruments in question; and we have expended a good deal of time and labor in the examination of the proofs in the record, and especially the books of

the bank, which were introduced in evidence at the trial; and from such examination and consideration we are constrained to conclude that the evidence is insufficient to warrant the decree rendered by the learned trial court. The only direct evidence in the record as to the alleged fraudulent transactions between Cain Brothers and the bank consists of the testimony of George and James Cain. The former, it appears, was the principal manager of the partnership business of Cain Brothers, and seems to have represented the firm almost exclusively in its transactions with the bank. Both George and James Cain testified that the deed and the chattel mortgages were made, not as security for their debt to the bank, but in trust to the bank for the use and benefit of Cain Brothers, and that the deed was made for the purpose of delaying their creditors for the time being. The grantee, Wheeler, did not testify at the trial, nor did H. W. Wheeler, who was, at the time the notes and mortgages were given, the president of the bank. It follows, therefore, that the validity or invalidity of the deed and mortgages must be determined mainly from the testimony of George and James Cain. It is contended by counsel for the respondents that, inasmuch as there is no evidence in the record controverting their testimony, this court must of necessity affirm the judgment of the court below; but this, we think, by no means necessarily follows. The instruments which it is sought to set aside are fair upon their face, and we have been unable to discover any transaction of the bank or its officers, which is incompatible with fairness and good faith upon their part, and the question before us must be determined upon the established facts. Where fraud is the issue to be determined, it must be established by satisfactory evidence, as it is not presumed in law, and will not be imputed to a party on slight and unsatisfactory evidence. In some jurisdictions —notably in Alabama—it is held that the motive or in-

tent of a party in the execution of a written instrument cannot be proved or disproved by his own testimony, but must be inferred from the facts and circumstances surrounding and characterizing the transaction. *Coal City Coal & Coke Co. v. Hazard Powder Co.,* 108 Ala. 218 (19 South. 392). See, also, *McCormick v. Joseph,* 77 Ala. 236, and *Wheless v. Rhodes,* 70 Ala. 419. But in courts where it is held that a party to an instrument may testify as to his motive or intent in executing it—and which seems to be the general rule—his testimony is regarded merely as an expression of his opinion as to the character of the transaction, and, if it is not corroborated by other evidence, it is entitled to but little weight. Bump, Fraudulent Conveyances (4th ed.), § 618; *Atwood v. Impson,* 20 N. J. Eq. 150; *Work v. Ellis,* 50 Barb. 512; *Griffin v. Marquardt,* 21 N. Y. 121; *Kittering v. Parker,* 8 Ind. 44. In the last mentioned case a bill was filed to set aside a conveyance alleged to have been fraudulently executed, and the court there held that the uncorroborated testimony of the only witness to fraud in the vendee, and who was implicated by his own testimony as a participant in the fraud, was not sufficient to set aside the conveyance, and that, in such cases, the witness ought to be strongly corroborated in order to authorize such a decree. In *Griffin v. Marquardt, supra,* the question was whether an assignor in trust for creditors had made an assignment for the purpose of gaining time to pay his creditors and protect his indorsers, and the assignor was asked this question: "Why did you make an assignment?" And he answered, "I made the assignment for the purpose of gaining time to pay my creditors. . . . I wanted to protect my indorsers. I made the assignment to pay my debts." This testimony is very much like the testimony of the Cains in this instance, and it was there argued by counsel that the indisputable testimony established the fact of fraud beyond

controversy, but the court held otherwise, and remarked:

" There is no force in the suggestion. Had Marquardt testified unqualifiedly that his sole purpose in making the assignment was to gain time to pay his creditors, it would not have been testimony so conclusive in its nature as to have constrained the judge who tried the cause, regardless of all the other evidence in the case, to find against the *bona fides* of the assignment. The short answer is, that what we are pointed to was mere evidence addressed to the judge, establishing no fact conclusively, but to be weighed and considered with the other evidence in the case, in passing upon and determining the question of an actual fraudulent intent. That it was the testimony of the assignor, gave no conclusive character to it in the establishment of a fact."

And in *Atwood v. Impson, supra,* where the question was as to whether a bill of sale of chattels was intended to defraud creditors, the learned chancellor observed that "It would be dangerous to allow a solemn written instrument to be overthrown for fraud, by the unsupported evidence of a participator in that fraud;" and also stated that one of the parties, by testifying to his own fraudulent act, fixed himself with infamy, and impaired his credit as a witness. We think that the principle announced in the foregoing authorities is, and ought to be, the law. The title to property would be extremely uncertain if it could be divested by the uncorroborated testimony of a party to the conveyance. The fact that a party to a solemn written instrument attempts to impeach it as fraudulent necessarily constrains one to look upon his testimony with more or less of suspicion. But in this case we not only have the testimony of George Cain and James Cain to the effect that the deed and the several chattel mortgages were in fact fraudulently given and received, but we find that they had previously subscribed to an affidavit in each of the chattel mortgages that the same was made in good faith, and without any design to hinder, delay or defraud cred-

itors.   It is true that they stated while upon the witness
stand that, although they signed the affidavits which were
attached to these mortgages and were necessary to their
validity under the statute, they did not, in fact, swear to
them, or, as one of them said, "did not hold up his hand."
In our opinion, this explanation is not, to say the least,
entitled to much consideration, especially as the officer
whose duty it was to certify the oath, and who is presumed
to have done his duty, has specifically testified that he did
administer the oath to each of the subscribers to the
affidavits.

It is claimed, however, by counsel for the respondents,
that there are certain badges of fraud shown in the record,
and that such badges are sufficient to sustain the judgment
and decree.   For instance, it is said that the fact that the
grantee, Wheeler, advertised the property in question for
sale on the 30th day of September, 1895, was sufficient
in itself to show that the deed and mortgages were not
made for security, as claimed by appellant.   And it is
further insisted that the bank at the time it received the
deeds and mortgages had collateral security sufficient to
secure the indebtedness of Cain Brothers, and that the
property conveyed in addition to the collateral security
was largely in excess of the debt; and it is argued from
these facts that it is evident that the intent of all the par-
ties to the instruments in question was to hinder, delay or
defraud the other creditors of Cain Brothers.   While it is
no doubt true that a single badge of fraud may, in a par-
ticular case, be itself sufficient to invalidate a written in-
strument, it is also true that several, or even all, of the
badges combined, may not be sufficient, in view of all the
circumstances, to overthrow a conveyance.   Whenever the
evidence is such, in a given case, as not to satisfy the mind
and conscience and produce a satisfactory conviction that

fraud was intended, the instrument should be sustained. Bump, Fraudulent Conveyances (4th ed.), § 619.

It is also contended by the appellant that the court erred in overruling its demurrer to the complaint on the ground that the facts constituting the alleged fraud were not specifically stated, but we are of the opinion that no error was committed by the court in that regard.

It transpired during the course of the trial that counsel for the plaintiffs had made an agreement with his clients that he would pay the costs of the suit and take a certain proportion of the amount recovered in the action as, and for, his compensation as attorney; and it is claimed by counsel for appellant that the court should have dismissed the case when those facts were made apparent. But, while there are some decisions which support the appellant's contention, we think the great weight of authority, and the better reason, are against his position. Conceding, but not deciding, that the contract stated was a champertous one, we nevertheless think that it cannot be invoked as a defense to this action. A champertous contract can only be set up as a defense in an action in which the agreement itself is sought to be enforced. 5 Am. & Eng. Enc. Law (2d ed.), p. 832, and cases cited.

Respondents claim that the judgment must be affirmed, at all events, for the reason that the notes held by the bank are not the identical notes which are claimed to have been secured by the deed and the mortgages. But this position, we think, is untenable, and that the rule is that a change in the form of the debt does not affect the security. 1 Jones, Mortgages (4th ed.), § 924, 355; 15 Am. & Eng. Enc. Law, p. 869; *Heively v. Matteson,* 54 Iowa, 505 (6 N. W. 732).

Appellant complains of the ruling of the court in refusing to continue the cause or grant leave to appellant to take the depositions of E. R. Wheeler and H. W. Wheeler,

the cashier and president, respectively, of the Blaine National Bank. It is not contended by appellant that it did not have sufficient time to take these depositions before the time set for the trial of the cause. The application was made on the ground of surprise on the part of counsel for appellant. It appears that appellant's counsel, some time before the trial, requested one David who was then cashier of the bank, to see George Cain, one of the defendants in the case, and ascertain what he would testify to if called at the trial; and it is shown by the affidavit of David, and that of counsel, that the former did see Cain as requested and, after speaking to him upon the subject, reported to counsel for the bank that Cain had stated that the instruments were *bona fide* and just what they purported to be, and for that reason, and that alone, the depositions of the Wheelers, both of whom resided outside of the state, were not taken. George Cain, in an affidavit filed in the cause, denied making such statement to David; but, under the circumstances of the case, and considering that it was a suit in equity, we think the learned trial court should at least have granted leave to take the depositions, as it must have appeared at that stage of the proceedings that the absolute truth in regard to the intent of the parties to the instruments could not well be ascertained without the testimony of the Wheelers. We are, of course, not unmindful of the fact that the court was clothed with a legal discretion in the matter; and although, as we have said, we think the motion should have been granted, we would not, however, be disposed to reverse the judgment upon that ground alone. Upon the whole case we are of the opinion that there should be a new trial, and the judgment is therefore reversed, and the cause remanded to the superior court for further proceedings in accordance with this opinion.

SCOTT, C. J., and GORDON, DUNBAR and REAVIS, JJ., concur.