[No. 549-3.    Division Three.    September 26, 1973.]

NATIONAL BANK OF COMMERCE, *Respondent,* v. ALVA E. FOUNTAIN *et al., Appellants,* McCALL FARM CHEMICAL, INC., *et al., Respondents.*

728

*Willard W. Jones* and *Harrison H. deMers*, for appellants.
*Edward A. Dawson* and *Dawson & Borst*, for respondents.

McINTURFF, J.—Plaintiff, National Bank of Commerce, a Washington corporation, as successor to The State Bank of Wilbur, brought this action seeking foreclosure of chattel and real estate mortgages given by the defendants to secure promissory notes outstanding in the amount of $110,000. The trial court, after finding the notes due and owing, entered a decree of foreclosure on December 22, 1971.

Defendant Alva E. Fountain, a farmer of many years, was the owner of an undivided five-eighths remainder interest in certain real property known as the Endicott Ranch, located in Whitman County, Washington. Defendant Gertrude Fountain, mother of Alva E. Fountain, held a life-estate interest in the entire property known as the Endicott Ranch. Alva E. Fountain had farmed the Endicott Ranch for many years under a 50-year lease entered into with his mother, said lease having been properly recorded on December 6, 1951.

On November 29, 1968, defendant Alva E. Fountain, indi-

vidually and as attorney-in-fact for defendant Gertrude Fountain, in order to secure the payment of two notes of the same date totaling $110,000, executed and delivered to plaintiff a real estate mortgage covering an undivided five-eighths interest in the Endicott Ranch. On May 16, 1969, defendant executed two new notes totaling $107,700, in exchange for cancellation of the notes dated November 29, 1968, and delivered another note for $5,000 on May 27, 1969. On both November 29, 1968, and May 16, 1969, defendant also executed and delivered chattel mortgages to the plaintiff.

Plaintiff, in seeking foreclosure, alleged nonpayment of the notes. The court decreed foreclosure of the real estate mortgage. Defendant Alva E. Fountain filed a counterclaim, alleging plaintiff had failed to fulfill the terms of an oral contract by which plaintiff had bound itself to provide farm operation financing for a period of years, and the plaintiff's failure to perform this oral contract had resulted in substantial damage to defendant. From the court's decree of foreclosure and the dismissal of their counterclaim, defendants appeal. The primary issues presented concern only the foreclosure of the real estate mortgage, not the foreclosure of the chattel mortgages on farm equipment.

Defendant Alva Fountain first contends the trial court erred in holding his leasehold estate in the Endicott Ranch was extinguished by the real estate mortgage foreclosure. The trial court, in decreeing possession of the property to the purchaser at the foreclosure sale, held that the real estate mortgage was a mortgage not only of defendant Alva Fountain's undivided five-eighths remainder interest in the ranch, but also included his leasehold interest under the doctrine of merger of estates.

As a general rule a tenancy for years is extinguished and merges in the freehold estate when the freehold and the tenancy are held by one person at the same instance in time, provided there exists no intermediate estate. *Mobley v. Harkins*, 14 Wn.2d 276, 128 P.2d 289, 143

A.L.R. 88 (1942). In *Mobley*, at 281-82, the court comments upon the doctrine of merger as follows:

[M]odernly the doctrine of merger is not favored either at law or in equity. Consequently, the courts will not compel a merger of estates where the party in whom the two interests are vested does not intend such a merger to take place, or where it would be inimical to the interest of the party in whom the several estates have united (see *Beecher v. Thompson*, 120 Wash. 520, 207 Pac. 1056, 29 A..L. R. 699, and *Anderson v. Starr*, 159 Wash. 641, 294 Pac. 581, both involving mortgages), nor will they recognize a claim of merger where to do so would prejudice the rights of innocent third persons. 19 Am. Jur. 589, Estates, § 136; 21 C.J. 1034, Estates, § 234.

In the instant case the doctrine of merger is inappropriate. Defendant Gertrude Fountain, as lessor, retained a reversionary interest in the Endicott Ranch, in that she retained her life estate subject only to an estate for years granted in the lease to defendant Alva E. Fountain. This reversionary interest constituted an intermediate estate during her lifetime, which eliminates the possibility that defendant Fountain's undivided five-eighths remainder interest and his leasehold estate could merge.

Having denied the application of the doctrine of merger, the remaining question is, does a preexisting lease executed between joint mortgagors, who have subsequently mortgaged their interest in property as life tenant and remainderman, respectively, remain in effect following foreclosure by the mortgagee? Plaintiff urges that the fact the lessee is also the mortgagor necessitates an exception to the general rule that a lease on property subsequently mortgaged takes priority over the mortgage.[1] We disagree.

In *Andrews v. Cusin*, 65 Wn.2d 205, 396 P.2d 155 (1964), the court stated at page 207:

There can be no question but that, under our statutes and decisions, a leasehold interest in real estate for a term less than life is personal property. *In re Barclay's Estate*, 1 Wn. (2d) 82, 95 P. (2d) 393; *Taylor v. Basye*, 119

---

[1] *See* 14 A.L.R. 664 for cases supporting this general rule.

Wash. 263, 205 Pac. 16; *American Sav. Bank & Trust Co. v. Mafridge*, 60 Wash. 180, 110 Pac. 1015.

■ A leasehold interest in real property for a term less than life constitutes personal property, not subject to a real estate mortgage unless such interest is specifically included in the mortgage. *Ingersol v. Seattle-First Nat'l Bank*, 63 Wn.2d 354, 387 P.2d 538 (1963). In the instant case the lease in question was properly recorded, giving constructive notice of the defendant's leasehold interest to all persons. The leasehold interest, not being specifically set forth in the mortgage, is not extinguished by the mortgage foreclosure. Defendant's leasehold interest being prior in time takes priority over the subject of the mortgage. The trial court erred in decreeing possession of the property in the purchaser at the foreclosure sale.

■ Defendants next urge that the trial court erred in decreeing foreclosure of the real estate mortgage because the notes sued upon were not the notes described in the mortgage. At issue is whether the cancellation of the original notes in return for execution of renewal notes by the same party constitutes a release of the mortgage. In *Lincoln County State Bank v. Martin*, 112 Wash. 186, 191 P. 815 (1920) the court, at page 190, responding to this question, stated:

> The fact that the original $3,000 note has been renewed does not change the character of the debt. The rule is that a change in the form of a debt does not affect the security. *Straw-Ellsworth Mfg. Co. v. Cain*, 20 Wash. 351, 55 Pac. 321.

The notes sued upon were nothing more than renewal notes, having no effect upon the underlying security (mortgages). The action of the trial court in decreeing foreclosure of the mortgages was, therefore, proper.

Defendants next contend the trial court erred when it allowed counsel for the plaintiff to continue as counsel when he had previously represented the defendant in matters which were involved in the instant case.

The plaintiff's counsel (not on appeal) served as legal

counsel for defendant Alva E. Fountain over a 4½ month period in late 1967 and early 1968. He had represented the defendant in matters involving the acquisition of money necessary for purchasing the Big Dipper Ranch (hereinafter referred to as the Ranch) at Wilson Creek; he also had all the defendant's files pertaining to the Ranch, and was involved in preliminary negotiations pertaining to the transaction which culminated in the purchase of the Ranch. In the record is a letter dated February 8, 1968 from counsel to Mr. Fountain, stating that he had returned the files to attorney Allan at Ephrata; that he had done approximately $2,000 worth of work for the defendant but that the $1,000 paid by defendant was sufficient. Defendant therefore contends that the plaintiff's attorney was familiar with his dealings which were important to the counterclaim and setoff, and to financial matters pertaining to the Ranch.

In the present action defendant Alva Fountain counterclaimed for breach of contract, contending plaintiff had by course of conduct and oral agreement agreed to continue financing his needs for operating the Ranch. This contract to finance was allegedly made while plaintiff's counsel was representing the defendant and involved negotiations leading to the notes and mortgages executed in November of 1968, which are the basis of the instant action.

The plaintiff apparently employed its attorney Friday evening before the Monday the trial commenced. On Monday, when the defendant saw him in the hallway, he realized for the first time his former attorney was representing the plaintiff against him. A discussion in chambers, not in record, took place and concluded with the court stating:

> [B]ecause of the time element involved it appeared to me that any employment that . . . [plaintiff's counsel] may have had by Mr. Fountain was completed and the relationship of attorney-client was terminated prior to the incidents shown in the file, and as advised *by me* by . . . in chambers, therefore, I am overruling your objection to . . . appearing as counsel.

Plaintiff contends its counsel was not directly involved in

the defendant's relationship with the plaintiff bank; that he (plaintiff's counsel) had no intimate knowledge of the facts surrounding this lawsuit or any prior knowledge thereto; that he was only instrumental in obtaining a loan from the title company, and that this was not an issue in the present case.

In *Kurbitz v. Kurbitz*, 77 Wn.2d 943, 468 P.2d 673 (1970), the court, in deciding a motion to exclude counsel, held that one factor to be considered when an attorney is disqualified for conflict of interest is whether the matters embraced within the pending suit involving an attorney's former client are substantially related to matters on which the attorney previously represented the former client. The court then concluded by saying: "It is sufficient that an *appearance* of conflicting interests has been made." (Italics ours.)

There may be an appearance of conflict of interest but there is no record of the discussion held in chambers. Therefore, any adequate basis upon which to conclude there was an abuse of discretion by the trial court is not present. Additionally, unlike *Kurbitz*, we have the record of the representation of plaintiff's counsel in trial and find no substantial evidence of the utilization of any confidential information acquired by his prior relationship with defendant Fountain.

Finally, defendants assign error to the trial court's dismissal of defendant Alva Fountain's counterclaim upon plaintiff's motion. That assignment of error is not argued in defendant's brief. Assignments of error which are not argued will not be considered. *State v. Reader's Digest Ass'n*, 81 Wn.2d 259, 501 P.2d 290 (1972); *In re ·Port of Seattle*, 80 Wn.2d 392, 495 P.2d 327 (1972).

The decision of the trial court is reversed insofar as the judgment held the leasehold interest of the defendant Alva E. Fountain was extinguished by the mortgage foreclosure. Judgment of the trial court in all other respects is affirmed. Each party shall bear its own costs.

GREEN, C.J., and MUNSON, J., concur.