[No. 47946–1.  En Banc.  June 10, 1982.]

THE CITY OF HOQUIAM, *Respondent,* v. THE PUBLIC
EMPLOYMENT RELATIONS COMMISSION, ET AL,
*Petitioners.*

*Kenneth O. Eikenberry, Attorney General,* and *Richard A. Heath, Assistant,* for petitioners Public Employment Relations Commission, et al.

*Ferguson & Burdell,* by *William Wesselhoeft* and *Schweppe, Doolittle, Krug, Tausend & Beezer, P.S.,* by *James B. Street,* for petitioner Hoquiam Professional Fire-fighters.

*Omar S. Parker, City Attorney,* and *Jon C. Parker, Assistant,* for respondent.

DIMMICK, J.—When a partner in a law firm is one of three commissioners on the Public Employment Relations Commission (PERC/Commission), may her law firm represent a client before that Commission or an independent

hearing examiner if the individual partner disqualifies herself from any participation in the matter? We conclude that the law firm may continue its representation of the client under the applicable statutes, the appearance of fairness doctrine, and the disciplinary rules of the Code of Professional Responsibility.

Hoquiam Professional Firefighters, Local 315 (Union), is the bargaining representative for certain employees of the City of Hoquiam Fire Department (City). As a result of two unilateral actions by the City, the result of which was to downgrade three officer positions, the Union filed a grievance with the City. When the issues were not satisfactorily resolved, the Union filed an unfair labor practice complaint with the Public Employment Relations Commission. The Union was represented during this period by the law firm of Schweppe, Doolittle, Krug, Tausend and Beezer.

When the PERC complaint came for hearing on June 8, 1978, the City moved to cancel the hearing. The City contended that because one of the PERC commissioners (its chair), Mary Ellen Krug, was a partner in the law firm which was representing the Union, any hearing would be void under the appearance of fairness doctrine. The hearing examiner denied the motion to cancel, but granted a continuance to permit the City to seek a writ of prohibition. The Superior Court issued a temporary writ. Krug then filed an affidavit in which she stated that she considered herself disqualified in all cases in which any client of her law firm was a party or had any interest. She also stated that she would not discuss the case with members of her firm or with the PERC hearing examiner. A superior court judge quashed the writ of prohibition holding that Krug's disqualification was sufficient to satisfy the appearance of fairness doctrine.

The City appealed that decision and requested the Court of Appeals to stay the PERC proceedings pending appeal. The motion to stay was denied, and the hearing examiner, following a hearing, ruled in favor of the Union on the merits of the unfair labor practice claim.

The City did not appeal the hearing examiner's decision to the Commission as provided in WAC 391–21–534,[1] but instead appealed directly to the Superior Court. A different judge ruled that because of Krug's position on PERC, the City was not required to exhaust its administrative remedies by appealing to the PERC commissioners. On the merits, the trial judge held that the hearing examiner's determination of an unfair labor practice was clearly erroneous and reversed that decision. The Union and PERC appealed.

The cases were consolidated on appeal. The Court of Appeals reversed both trial court decisions and remanded for a new hearing. The court, however, did not base its decision upon the appearance of fairness doctrine, which had been briefed and argued. Rather, the court held that in its view, because Krug had not sufficiently disassociated herself from her firm's representation of the Union by disavowing the fees, the entire firm was disqualified under DR 5–105(D) from representing the Union in a case heard by the PERC. The court also held that because the hearing had been "tainted" by the violation of the disciplinary rules, the trial court could not have adequately applied the "clearly erroneous" test on appeal. *Hoquiam v. State Pub. Empl. Relations Comm'n*, 29 Wn. App. 319, 628 P.2d 1314 (1981).

We hold that Ms. Krug's self–disqualification satisfied the Executive Conflict of Interest Act, RCW 42.18, and the appearance of fairness doctrine. We further conclude that Ms. Krug's self–disqualification cannot be imputed to her law firm under the statutes, the appearance of fairness doctrine or the disciplinary rules of the Code of Professional Responsibility. Accordingly, we reverse the Court of

---

[1]WAC 391–21–534 provides, in part, as follows:

"Within twenty days following the date of the issuance of the examiner's findings of fact, conclusions of law and order, any party may file with the commission a petition for review of all or any part of the examiner's findings of fact, conclusions of law and order or to any other part of the record or proceedings, including rulings upon all motions or objections."

Appeals and reinstate the hearing examiner's ruling. If the City wishes to seek judicial review of that ruling, it must first exhaust its administrative remedies.

## I
### EXECUTIVE CONFLICT OF INTEREST ACT, RCW 42.18

Ms. Krug took no active role in any part of the proceedings. She filed an affidavit in which she stated:

I consider myself automatically disqualified with respect to any cases which come before the Commission to which any client of my law firm is a party or in which it has an interest . . .

If the instant case were ever to reach the Commission, I would certainly disqualify myself. This means that there would be no discussion of the case in my presence. I would see no documents pertaining to the case and would take no part in the decision of the case. Commissioners Beck and Roberts alone would consider and decide the case.

In the office of my law firm, cases that could come before PERC or its staff are not discussed with me, and I do not know they are pending unless something like the instant case arises. I still know nothing of the Hoquiam Firefighters case except that the jurisdiction of PERC has been challenged because of my presence on the Commission.

▮ Both trial courts specifically found that Ms. Krug had not and would not participate as a commissioner in any proceeding in which her law firm represented a party. This is precisely what the Executive Conflict of Interest Act, RCW 42.18, requires. It does not require in addition that the law firm abandon its representation of a client.

The Executive Conflict of Interest Act was enacted in 1969 to establish specific rules to cover conflict of interest situations involving state executive employees. The act specifically applies to members of state commissions such as PERC. RCW 42.18.130. Pursuant to RCW 42.18.160 a state employee must disqualify himself from participating in any proceeding involving the State in which the employee or any one of a number of persons, including a

partner, has a direct and substantial economic interest. RCW 42.18.170(3) provides that the partnership of the state employee may not assist another person in a proceeding involving the State if the state employee could not assist that person in the proceeding. RCW 42.18.170(1) provides that a state employee cannot assist a person if he has participated in the proceeding as a state employee or if such transaction was under his official responsibility at any time within 2 years prior to such assistance. Conversely, if the state employee has not participated in, or had effective responsibility for, a proceeding, his partnership may assist a party. Thus, Ms. Krug's self–disqualification did not extend to her law firm and satisfied RCW 42.18.

The public employment labor relations act also indicates that Ms. Krug's disqualification was sufficient. The act anticipates that part–time commissioners would retain their ongoing professions. By providing for a 2–person quorum, RCW 41.58.010(3) clearly allows for disqualification of a commissioner in certain cases. At her confirmation hearing before the Senate, required by RCW 41.58.010(1), Ms. Krug was specifically asked whether her membership in a law firm with a substantial labor practice might conflict with her duties as commissioner. She replied that in any case in which her firm was counsel for a party before PERC, she would withdraw from all participation in the proceeding. We may assume her response was sufficient since the Senate approved her appointment.

In adopting the Executive Conflict of Interest Act the Legislature sought to "promote and balance the dual objectives of protecting the integrity of the government of the state of Washington and of facilitating the recruitment and retention of the personnel needed by the state, . . ." RCW 42.18.010. One of the objectives of the balance was to avoid "creating unnecessary barriers to public service." RCW 42.18.010.

The balancing referred to in RCW 42.18.010 was also the Legislature's specific objective when it created the Public Employment Relations Commission in 1975. RCW 41.58-

.010(2) expressly provides that the Commission should include persons "knowledgeable in the area of labor relations in the state." One of the important sources of such persons is the private legal practice as illustrated by the instant case. Ms. Krug is a respected member of the Washington State Bar Association with considerable expertise in labor relations. She has practiced law in Washington since 1943 and has been a partner in Schweppe, Doolittle, Krug, Tausend & Beezer since 1954. Her personal practice has been principally in the field of labor relations for many years.

To require a commissioner's law firm to abandon its practice before PERC in order to permit one of its partners or associates to serve on the Commission clearly thwarts the intent of the Legislature in enacting the Executive Conflict of Interest Act and the public employment labor relations act. Such a result would be onerous as demonstrated by Ms. Krug's subsequent resignation from the Commission. She apparently did so when government service became too burdensome as a result of the trial court's decision.

## II
### Appearance of Fairness Doctrine

The City asserts the actions of Ms. Krug and her law firm violated the appearance of fairness doctrine. The Union and PERC, of course, disagree and further contend that RCW 42.18 is determinative. The statute is directed to those situations where the partnership's direct and substantial economic interest causes a conflict. The City asserts that regardless of the partnership's economic interest the appearance of fairness doctrine is violated due to the general associational ties between Ms. Krug, her law firm and the other members of the Commission. Thus, an analysis of this case under the judicially created doctrine is appropriate. We conclude, however, the appearance of fairness doctrine establishes the same nonparticipation standard as the statute.

We have applied the appearance of fairness doctrine to administrative tribunals acting in a quasi–judicial capacity in two circumstances: (1) when an agency has employed procedures that created the appearance of unfairness, *e.g., Smith v. Skagit Cy.,* 75 Wn.2d 715, 453 P.2d 832 (1969) and (2) when one or more acting members of the decisionmaking bodies have apparent conflicts of interest creating an appearance of unfairness or partiality, *e.g., Buell v. Bremerton,* 80 Wn.2d 518, 495 P.2d 1358 (1972).

██ ██ The present case is subject to analysis under the second category. We have enunciated the following test as a prerequisite to the application of the doctrine in these circumstances:

> Would a disinterested person, having been apprised of the totality of a board member's personal interest in a matter being acted upon, be reasonably justified in thinking that partiality may exist?

*Swift v. Island Cy.,* 87 Wn.2d 348, 361, 552 P.2d 175 (1976). Participation in the decisionmaking process by a person who is potentially interested or biased is the evil which the appearance of fairness doctrine seeks to prevent. *See, e.g., Save a Valuable Env't v. Bothell,* 89 Wn.2d 862, 576 P.2d 401 (1978) (full participation and vote by two interested members); *Chicago, M., St. P. & Pac. R.R. v. State Human Rights Comm'n,* 87 Wn.2d 802, 557 P.2d 307 (1976) (full participation and vote by interested member); *Swift v. Island Cy., supra* (full participation and vote by interested member); *Narrowsview Preserv. Ass'n v. Tacoma,* 84 Wn.2d 416, 526 P.2d 897 (1974) (full participation and vote by interested members); *Anderson v. Island Cy.,* 81 Wn.2d 312, 501 P.2d 594 (1972) (interested member chaired hearing expressing personal views); *Fleming v. Tacoma,* 81 Wn.2d 292, 502 P.2d 327 (1972) (member with a possible conflict of interest fully participated and voted); *Buell v. Bremerton, supra* (interested member presided over session in which disputed matter was decided); *Chrobuck v. Snohomish Cy.,* 78 Wn.2d 858, 480 P.2d 489 (1971) (one interested member participated fully and another participated

but did not vote). Conspicuously, since no court found Ms. Krug to be a participant in the proceeding, the foregoing test was satisfied.

It strains our credulity to imagine that the hearing examiner or the other two commissioners would be partial to the Union merely because it was represented by Ms. Krug's law firm. In fact the presumption is that "public officers will properly and legally perform their duties until the contrary is shown." *Rosso v. State Personnel Bd.,* 68 Wn.2d 16, 20, 411 P.2d 138 (1966). The hearing examiner in particular stated in his ruling:

> The Examiner states for the record that he is a "civil service" employee of the State whose employment is governed and protected by Chapter 41.06 RCW; that he is not supervised by Chairman Krug; that he has never discussed this case with Chairman Krug; and that he is familiar with Chairman Krug's practice of disqualifying herself in cases involving her law firm, its associates and its clients.

We cannot accept the ethereal argument that Ms. Krug's possible personal financial benefit from the fee caused any appearance of unfairness on the part of the decision makers who obviously had no such interest. We also cannot find an appearance of unfairness in the fact that Ms. Krug's name appeared on PERC's official acknowledgment of the unfair labor complaint as well as on the letterhead of the firm filing the complaint. *Cf. Hill v. Department of Labor & Indus.,* 90 Wn.2d 276, 580 P.2d 636 (1978) (wherein we held a supervisor's facsimile signature and name appearing on an order from which an appeal was taken did not point to any partiality on his part when he sat on the appeals board.)

To acquiesce in the City's view that the law firm abandon its practice before PERC would result in an unnecessarily harsh consequence and would not be within the contemplation of the appearance of fairness doctrine. Law firms are an important and obvious source of commissioners for PERC and other similar boards, agencies and commissions.

The result of our accepting the City's assertion would be to cut off an important pool from which to draw qualified members. Public policy and the policies of RCW 42.18 and 41.58 are opposed to such a consequence.

### III
### CODE OF PROFESSIONAL RESPONSIBILITY

The Court of Appeals did not base its decision on the statutes or the appearance of fairness. Rather the court determined that Ms. Krug was disqualified from participating in the case pursuant to DR 9–101(B) and that her law firm's representation of a client before PERC violated DR 5–105(D). We disagree with that analysis for the following reasons.

DR 9–101(B) provides:

> A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee.

By its very terms the rule applies to *former* public employees. This is unmistakable given the use of the past tense terms of "had" and "while he was." The authorities cited by the Court of Appeals, including *Armstrong v. McAlpin,* 625 F.2d 433 (2d Cir. 1980), analyze situations where a former government employee enters the private sector. The current rule's progenitor was Canon 36, which stated in part: "'A lawyer, having once held public office or having been in the public employ, should not after his retirement accept employment in connection with any matter which he has investigated or passed upon while in such office or employ.'" American Bar Found., *Annotated Code of Professional Responsibility,* Comment at 418 (1979). Courts and commentators had problems in interpreting the language of Canon 36. The current rule was formulated to clarify the terms but did not broaden the rule's application beyond former government employees. *See* Annotated Code of Professional Responsibility, at 418–30.

Even if DR 9–101(B) is read to apply to an attorney who is not a former public employee, it does not apply to the

instant case. A triggering fact for the rule's application is that the public employee "had substantial responsibility" for the matter in question. Ms. Krug had no such responsibility since she had disqualified herself from any participation in the matter. In addition, the rule prohibits an attorney from accepting "private employment." Accordingly, if the rule did apply to Ms. Krug, it would only disqualify her from participation in the matter as a member of the firm. It is evident to us that DR 9–101(B) was not meant to reach the situation at bar.

The Court of Appeals recognized that Ms. Krug never had substantial responsibility in the case as a public employee (29 Wn. App. at 331), that she did not leave public employment to accept a private position (29 Wn. App. at 330), and that many of the policies underlying the rule did not apply to Ms. Krug. 29 Wn. App. at 330. The court, however, determined an "appearance of evil" existed that disqualified her under DR 9–101(B).

This reasoning is troublesome. The court apparently held DR 9–101(B) applicable because an appearance of impropriety would exist contrary to Canon 9 if Ms. Krug were to sit on the Commission. Canon 9 may have in fact motivated Ms. Krug to disqualify herself. However, self–disqualification pursuant to a canon does not necessarily require disqualification under a disciplinary rule. A canon is not a disciplinary rule. The canons are "statements of axiomatic norms" designed to "embody the general concepts from which the Ethical Considerations and the Disciplinary Rules are derived." Preliminary Statement to our Code of Professional Responsibility. In sum, although Ms. Krug properly disqualified herself from participating in this matter, she was not required to do so under DR 9–101(B).

■ The Court of Appeals next step was to impute Ms. Krug's disqualification under DR 9–101(B) to her law firm. In doing so the court relied upon the American Bar Association's DR 5–105(D) which provides:

> If a lawyer is required to decline employment or to with-
> draw from employment *under a Disciplinary Rule,* no
> partner, or associate, or any other lawyer affiliated with
> him or his firm, may accept or continue such employ-
> ment.

(Italics ours.) Because we have concluded that DR 9–101(B)
did not serve to disqualify Ms. Krug and no other disci-
plinary rule has been asserted as applicable, it is evident
that the ABA's DR 5–105(D) does not apply to Ms. Krug's
law firm.

Moreover, Washington's CPR DR 5–105(D) has not been
revised in accord with the ABA's version. Our rule reads:

> If a lawyer is required to decline employment or to
> withdraw from employment *under DR 5–105,* no partner
> or associate of his or his firm may accept or continue
> such employment.

(Italics ours.)[2]

The Court of Appeals recognized the textual difference
between the ABA's rule and our own. However, the court
held that the difference did not preclude it from interpret-
ing our rule as the federal courts interpreted the ABA's
version. 29 Wn. App. at 332 n.12. The Court of Appeals in
effect modified our rule to read like the ABA's. This case is
not the proper vehicle for the modification of a disciplinary
rule.

In sum, we reinstate the hearing examiner's ruling. If the

---

[2]There is no serious contention that Ms. Krug was disqualified pursuant to
CPR DR 5–105 which provides in part:

"(A) A lawyer shall decline proffered employment if the exercise of his inde-
pendent professional judgment in behalf of a client will be or is likely to be
adversely affected by the acceptance of the proffered employment, except to the
extent permitted under DR 5–105(C).

"(B) A lawyer shall not continue multiple employment if the exercise of his
independent professional judgment in behalf of a client will be or is likely to be
adversely affected by his representation of another client, except to the extent
permitted under DR 5–105(C).

"(C) In the situations covered by DR 5–105(A) and (B), a lawyer may repre-
sent multiple clients if it is obvious that he can adequately represent the interest
of each and if each consents to the representation after full disclosure of the pos-
sible effect of such representation on the exercise of his independent professional
judgment on behalf of each."

City wishes to seek judicial review of that decision, it must first exhaust its administrative remedies by appeal to the Commission.

BRACHTENBACH, C.J., ROSELLINI, STAFFORD, UTTER, DOLLIVER, and WILLIAMS, JJ., and CUNNINGHAM and WIELAND, JJ. Pro Tem., concur.