673 P.2d 509

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Frank "Pax" MARTINEZ,
Defendant-Appellant.**

**No. 7213.**

Court of Appeals of New Mexico.

Nov. 23, 1983.

Paul Bardacke, Atty. Gen., Elizabeth Major, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Janet Clow, Chief Public Defender, Mary Ann Lunderman, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

WALTERS, Chief Judge.

The question presented by this appeal is the extent to which disqualification under the Code of Professional Responsibili-

ty, NMSA 1978, Code of Professional Responsibility, Rules 1–101 through 9–102 (Repl.Pamp.1982 and Cum.Supp.1982), reaches. Defendant appeals his conviction as an habitual offender. Issues other than the one stated are abandoned because they have not been briefed. *State v. Vogenthaler,* 89 N.M. 150, 548 P.2d 112 (Ct.App.1976).

Vaughn prosecuted defendant on one of his prior convictions. Vaughn then entered a partnership with Hunt. Hunt thereafter represented defendant briefly on the habitual charges, but that representation terminated and Mathis was appointed as defendant's counsel. In the meantime, Hunt moved and commenced sharing office space with Mathis. Mathis thereupon moved to withdraw as counsel, alleging the appearance of impropriety or potential conflict of interest in continued representation of defendant. Defendant concurred in the motion as being in his best interests. The court denied the motion.

The State assumes the court was not required to disqualify Mathis:

> The state is unable to find any provision in the Code of Professional Responsibility which would even suggest that Mr. Mathis, through Mr. Hunt, might have a conflict or give an appearance of impropriety stemming from Mr. Vaughn's earlier prosecution of the defendant. The fact that Mr. Hunt once associated with Mr. Vaughn and at a later time was sharing office space with Mr. Mathis, simply does not establish an overlap of interest leading to a conflict or an impropriety.

(From the Answer Brief.) No authority is cited for this argument by the State. It does concede, however, that Mr. Vaughn would be disqualified from representing defendant. *See* NMSA 1978, Code of Professional Responsibility, Rule 9–101(B) (Repl. Pamp.1982). Rule 5–105(D) of the Code (Cum.Supp.1983), provides:

> If a lawyer is required to decline employment or to withdraw from employment under Rule 5–105, no partner or associate of his or his firm may accept or continue such employment.

The State also concedes that Hunt, while associated with Vaughn, may have been disqualified under Rule 5–105(D).

■ According to the case law, however, Hunt's disqualification would extend beyond the date of the dissolution of the Vaughn and Hunt partnership. In *Laskey Bros. of W.Va., Inc. v. Warner Bros. Pictures, Inc.,* 224 F.2d 824, 826–27 (2d Cir. 1955), *cert. denied,* 350 U.S. 932, 76 S.Ct. 300, 100 L.Ed. 814 (1956), it was said:

> And once a partner is thus vicariously disqualified for a particular case, the subsequent dissolution of the partnership cannot cure his ineligibility to act as counsel in that case.

Thus, under *Laskey,* whether or not Hunt remained with Vaughn, he would be disqualified from acting as defendant's counsel.

The question is whether Hunt's taint infected Mathis once Hunt and Mathis began to share office space. Some authorities treat office-sharing as the type of association contemplated by Rule 5–105(D). ABA Formal Opinion 104 (1934); ABA Informal Opinion 995 (1967). See also the Missouri and Wisconsin opinions reported in Maru, 1980 Supplement to the Digest of Bar Association Ethics Opinions, Nos. 11,784 and 13,-222. We do not propose to express New Mexico's position on office-sharing, but note that the literal wording of Rule 5–105(D) could be interpreted to say that Mathis is so infected. If Hunt be required to withdraw under *Laskey,* then Mathis, as his associate, would also be required to withdraw.

We have been unable to find and we are not cited to any cases requiring vicarious disqualification twice-removed from the original source of disqualification. In *Laskey,* the harsh rule of disqualification was only applied to the first level of removal. At the second level, associates would only be disqualified to the extent that there was proof that they actually received confidential information. In other words, receipt of such information would not be imputed to them, "lest the chain of disqualification become endless." *Laskey* at 827. *American*

*Can Co. v. Citrus Feed Co.,* 436 F.2d 1125, 1129 (5th Cir.1971), says:

> [N]ew partners of a vicariously disqualified partner, to whom knowledge has been imputed during a former partnership, are not necessarily disqualified: they need show only that the vicariously disqualified partner's knowledge was imputed, not actual. [Citing *Laskey.*]

> [R]esort to so drastic a measure [as automatic disqualification] would not only be unwise, but would also set disturbing precedent. * * * [I]mputation and consequent disqualification could continue *ad infinitum.* It is not surprising, then, that the courts have carefully limited their travels in this area.

> \* \* \* \* \* \*

> Carriage of this imputation-on-an-imputation to its logical terminus could lead to extreme results in no way required to maintain public confidence in the bar.

■ These cases establish that the burden is on the lawyer seeking to remain in the case to show that knowledge was merely imputed, not actual. Here, there was no showing one way or the other. Defendant contends that the case must be reversed and remanded for a new trial.

The need for disqualification arises from two concepts: the first deals with confidences and possible disclosure thereof, with which Canon 4 is concerned; the second deals with loyalty and exercising independent judgment, and relates to Canon 5. Additionally, Canon 9 encouraging lawyers to avoid even the appearance of impropriety must be considered. All of these concepts are for the benefit of the former or first client—in this case, the State, by whom Vaughn was employed. Any breach of confidence by Vaughn should redound to defendant's benefit. Thus, breach of confidence would not appear to be the concern in the instant case.

■ Undivided loyalty is owed to current clients. *See United Nuclear Corp. v. General Atomic Co.,* 96 N.M. 155, 243, 629 P.2d 231, 319 (1980). Once a client becomes a former client, however, a lawyer is not barred forevermore from taking positions adverse to that client. If this were not so, a prosecutor could never enter private practice as a defense attorney. Thus, neither is loyalty to the current client the issue here.

■ Substantial relationship is the test under Canon 4 relating to confidences. *Id.* No such similar test is applied under Canon 5; rather, the disciplinary rules under Canon 5, and particularly Rule 5–105 on which defendant relies, seem to cover only current multiple employment. *See* Rules 5–105(A) and (B); *Kadish v. Commodity Futures Trading Comm'n,* 548 F.Supp. 1030, 1034 (N.D.Ill.1982); *City of Hoquiam v. Public Employment Relations Comm'n of the State of Washington,* 97 Wash.2d 481, 646 P.2d 129 (1982). Duties, of course, are owed to former clients. But they are not the sort that automatically mandate disqualification under Rule 5–105(D).

While not binding as authority, we note that nothing in the Model Rules of Professional Conduct as adopted by the American Bar Association on August 3, 1983, would serve to disqualify Mathis. The model rules, as they may apply to this case, provide:

**Rule 1.9   Conflict of Interest:   Former Client**

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

**Rule 1.10   Imputed   Disqualification:   General Rule**

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them prac-

ticing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2.

(b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(b) that is material to the matter.

(c) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless:

(1) The matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and

(2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(b) that is material to the matter.

(d) A disqualification prescribed by this Rule may be waived by the affected client under the conditions stated in Rule 1.7.

### Rule 1.11 Successive Government and Private Employment

(a) Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation. * * *

These rules support the view in this case that (1) the confidence concern is for the benefit of the former client and was waived by the State here, and (2) the requirement of loyalty vicariously disqualifies counsel only in the situation of a simultaneous representation.

Specifically, Rule 1.9 is satisfied because the State, as the former client, did not care "one way or the other," and thus consented to Mathis's representation. Rule 1.10(a) is satisfied because that rule only applies to lawyers who continue to be associated in a firm. Rule 1.10(b) (which refers to the precise situation before us) is satisfied because here, the State having consented, there can be no question of a breach of confidence. Rule 1.11(a) is satisfied for the same reasons.

It should be noted that courts treat disqualification matters not as purely legal concerns, but as equitable matters. *United Nuclear Corp. v. General Atomic Co.,* 96 N.M. at 244, 629 P.2d at 320. If it is not the party intended to be protected by the canons and disciplinary rules who raises the matter, a different standard is applied. *See United States v. Kitchin,* 592 F.2d 900 (5th Cir.), *cert. denied,* 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979). As we have noted, the party intended to be protected here is the State, but the State adopted a neutral policy in the trial court. It expressly stated on the record that it did not care whether counsel was allowed to withdraw or not.

■ Because the State was unconcerned with breaches of its confidences or divided loyalties, this case must be viewed not as an ethical matter but instead, simply as a case in which defendant wants to change counsel. *See State v. Salazar,* 81 N.M. 512, 469 P.2d 157 (Ct.App.1970). In such a situation, a defendant must show good cause for the change. *See State v. Bell,* 90 N.M. 134, 560 P.2d 925 (1977). Good cause may be shown when defendant's counsel or a member of his firm is currently representing a conflicting interest. *State v. Hernandez,* 22 SBB 952 (Ct.App.1983), *cert. granted,* 22 SBB 999. But there was no such allegation in this case of an actual conflict; the motion stated only that there was a "potential conflict of interest or, at least appearance of impropriety." That conclusion by defendant or Mathis, as movants, was not further explained.

At least one court has held that the district attorney's move to the public defender's office was not good cause for a change of counsel. *People v. Sawyer,* 83 A.D.2d 205, 443 N.Y.S.2d 926 (1981), *aff'd.* (express-

ly not deciding the issue), 57 N.Y.2d 12, 453 N.Y.S.2d 418, 438 N.E.2d 1133 (1982), *cert. denied,* ——— U.S. ———, 103 S.Ct. 830, 74 L.Ed.2d 1024 (1983). The situation in *Sawyer* was distinguished from its converse, where the defender moves to the prosecutor's office. *See State v. Chambers,* 86 N.M. 383, 524 P.2d 999 (Ct.App.1974). In the converse, or *Chambers,* situation, there is a real danger of breach of *defendant's* confidences or at least a substantial appearance of impropriety from defendant's perspective. In the *Sawyer* situation, which is the situation in this case, there is no perceptible prejudice to defendant and the State was unconcerned regarding any such possible prejudice to the State.

Under these circumstances and because of the foregoing reasons, it becomes defendant's burden to show some actual reason why Mathis should have been disqualified. Secondly, it is manifest that vicarious disqualification does not apply in this case. Defendant's argument relies on Canon 4 cases addressed to confidences, but confidences are not the issue here: (1) the State waived any breach of its confidences, and (2) any such breach should only benefit defendant. Finally, the rule appears to be that vicarious disqualification only applies to current associates of the disqualified lawyer.

For all the above reasons, defendant's conviction and sentence as an habitual criminal are affirmed.

IT IS SO ORDERED.

LOPEZ and NEAL, JJ., concur.