[Nos. 52857–8, 52858–6.  En Banc.  June 11, 1987.]

FIRST SMALL BUSINESS INVESTMENT COMPANY OF CALIFORNIA, *Petitioner,* v. INTERCAPITAL CORPORATION OF OREGON, ET AL, *Respondents.*

INTERCAPITAL CORPORATION OF OREGON, *Respondent,* v. INTERCAPITAL CORPORATION OF WASHINGTON, *Petitioner.*

*Edwards & Barbieri,* by *Malcolm L. Edwards* and *Catherine Wright Smith,* for petitioners.

*Garvey, Schubert, Adams & Barer,* by *Brian A. Morrison,* for respondent Intercapital Corporation of Oregon.

*Diamond & Sylvester,* by *F. Douglas Ruud* and *Alan D. Judy,* for respondents James, et al.

DOLLIVER, J.—In this consolidated action, First Small Business Investment Company (FSBIC) and Intercapital Corporation of Washington (ICW) challenge trial court orders disqualifying three law firms from further representation of FSBIC or ICW in pending lawsuits involving Intercapital Corporation of Oregon (ICO). We reverse the orders and reinstate the original judgments.

### ICO v. ICW

In April 1980, ICO officers William Furman and Alan James met with attorney David McDonald for about 2 hours to discuss a proposed lawsuit against ICW. McDonald later declined to represent ICO because he already represented U–Cart Concrete in a separate action against ICW, and U–Cart refused to waive any conflict that might have arisen from representing both ICO and U–Cart. ICO then hired another firm to represent it in the suit.

ICW was represented by Jones, Grey and Bayley. In December 1980, when ICW took Furman's deposition, McDonald appeared on behalf of U–Cart. During the deposition, McDonald asserted the attorney–client privilege, on behalf of ICO, to protect Furman against questions regarding his April 1980 conversation with Furman.

In 1983, shortly before the trial, Jones, Grey and Bayley associated McDonald as cocounsel. Upon learning of this association, ICO moved to disqualify both McDonald and Jones, Grey and Bayley.

At the hearing on this motion on September 26, 1983, McDonald told the judge the April 1980 conversation had occurred but he could not remember the content of it. He also said he could not have informed anyone at Jones, Grey and Bayley of anything he might have learned at the meeting. Counsel for ICO declined to challenge McDonald's credibility or request an evidentiary hearing on the issue.

McDonald withdrew from the case voluntarily. The trial court declined, however, to disqualify Jones, Grey and Bayley from its representation of ICW. The court expressly found McDonald had passed no confidential information to the firm.

Following trial, the court entered judgment in favor of ICW. ICO appealed solely on the basis of the pretrial ruling regarding the attorney disqualification issue. The Court of Appeals, in a decision filed June 11, 1985, reversed the trial court and held Jones, Grey and Bayley should have been disqualified. *Intercapital Corp. v. Intercapital Corp.*, 41 Wn. App. 9, 13–16, 700 P.2d 1213 (1985) (*ICO v. ICW*). The court held reversal was required even though ICO could not show it was prejudiced by the representation. The court presumed prejudice because McDonald "might have" passed privileged information on to Jones, Grey and Bayley. *Intercapital Corp.*, at 13. This court denied a petition for review by ICW on September 20, 1985 (104 Wn.2d 1015 (1985)).

Upon remand, the parties filed three motions with the trial court. First, ICW asked the trial court to rule Jones, Grey and Bayley was no longer disqualified from representing ICW, based upon the new Rules of Professional Conduct, which became effective September 1, 1985. ICW further argued that if the firm was found no longer disqualified a new trial would be redundant and consequently also asked the trial court to reinstate its original decision.

Second, ICO urged the court to continue the disqualification and further moved to extend the disqualification to another firm, Edwards and Barbieri, which had become associated with Jones, Grey and Bayley in this matter. ICO

argued the disqualification imputed by the Court of Appeals from McDonald to Jones, Grey and Bayley should be further imputed to any other attorney who later became associated with the firm.

Finally, ICW moved to disqualify the law firm of Diamond and Sylvester from further representation of ICO in the case. ICW argued Douglas Ruud, a member of the Diamond and Sylvester firm, was the attorney who formed the ICW corporation and was also involved as an attorney in the transactions in the underlying dispute.

In orders dated June 6, 1986, the court ruled against ICW on all these motions. The orders stated (1) Jones, Grey and Bayley continued to be disqualified, and the original judgment would not be reinstated; (2) the firm of Edwards and Barbieri, which had associated with Jones, Grey and Bayley 2 years after McDonald withdrew, was likewise disqualified; and (3) Diamond and Sylvester would not be disqualified to act as counsel for ICO. The judge further ruled all the working papers of Jones, Grey and Bayley and Edwards and Barbieri relating to this matter must be sealed and counsel "shall not reveal the content of such working files and papers to any person". Edwards and Barbieri was permitted, however, to continue to represent ICW in any review of these orders.

ICW was granted discretionary review by this court of these trial court orders.

## FSBIC v. ICO

In a separate action based upon somewhat related facts, FSBIC, of which ICW was a wholly owned subsidiary, had sued ICO, Furman, and James. In 1984, some time after McDonald had withdrawn in the other case, ICO, Furman, and James moved to disqualify Jones, Grey and Bayley in this action also. The court denied the motion, and the case proceeded to trial.

On June 11, 1985, when the Court of Appeals announced its decision in *ICO v. ICW,* the trial court in First Small Business Investment Company of California v. Intercapital

Corporation of Oregon (FSBIC v. ICO) declared a mistrial after 3 weeks of jury trial. McDonald had never been associated in the FSBIC case.

The trial court later entered orders stating: (1) the Jones, Grey and Bayley firm was disqualified from further representation of FSBIC; (2) Schweppe, Krug and Tausend, which had associated with Jones, Grey and Bayley, in the FSBIC case almost 2 years after McDonald had withdrawn in the *ICO v. ICW* case, was also disqualified; and (3) Diamond and Sylvester was not disqualified from representing ICO, Furman, and James. The court also sealed all work product of the FSBIC law firms.

FSBIC was granted discretionary review of these orders and the action was consolidated with *ICO v. ICW*.

## I

Counsel for FSBIC and ICW ask us to review the propriety of the earlier Court of Appeals decision in *ICO v. ICW*, find Jones, Grey and Bayley is not disqualified, and reinstate the original trial court judgment in *ICO v. ICW*. As an alternative, they argue that under the new Rules of Professional Conduct, Jones, Grey and Bayley should not now be disqualified, and the original decision should be reinstated because any new trial would not differ in any material respect from the prior trial. We conclude the original trial court judgment should be reinstated.

### Former Code of Professional Responsibility

When these lawsuits began and when the Court of Appeals made its decision, the former Code of Professional Responsibility then in effect provided in relevant part:

a lawyer shall not knowingly during or after termination of the professional relationship to his client:
(1) Reveal a confidence or secret of his client.
(2) Use a confidence or secret of his client to the disadvantage of the client.
(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.

Former CPR DR 4–101(B). The rule only addressed using or revealing client confidences and did not address attorney disqualification. The doctrine of attorney disqualification under the code had been developed primarily through case law.

The Court of Appeals in *ICO v. ICW* relied upon its interpretation of two earlier cases. In *Kurbitz v. Kurbitz*, 77 Wn.2d 943, 468 P.2d 673 (1970), the court disqualified a lawyer from representing a wife in a divorce proceeding where another partner in the law firm had earlier represented the husband and wife regarding probate and family corporation matters. In that context, the court held the former client is not required to show confidential information was actually possessed by a member of the law firm but rather only access to confidential information. *Kurbitz,* at 946.

The Court of Appeals also cited *Alpha Inv. Co. v. Tacoma,* 13 Wn. App. 532, 536 P.2d 674 (1975), which relied on *Kurbitz* in disqualifying a former deputy prosecutor from representing a plaintiff in an inverse condemnation suit which had been pending during the attorney's period of employment with the prosecutor's office. The court found in such circumstances a breached confidence need not be proved but "should be presumed". *Alpha Inv. Co.,* at 535.

Both of these cases can be distinguished, however, since they relied upon the nature of relationships within a law firm. As the court said in *Kurbitz*:

> The relationship of partners in the practice of law is a close and intimate one. The everyday interchange of ideas and problems between legal associates may inadvertently release information which would have been otherwise kept confidential. Should one partner—or former partner—be allowed to represent clients with adverse interests, confidences would surely be violated.

*Kurbitz,* at 946. This type of relationship is simply not present where the disqualified attorney is not a member of the same firm but merely associated as cocounsel for a

short period of time. Many jurisdictions therefore require proof of actual knowledge of confidential information where the disqualified attorney is not a member of the challenged law firm but has only associated with the firm as a cocounsel. *Akerly v. Red Barn Sys., Inc.*, 551 F.2d 539 (3d Cir. 1977); *see also Arkansas v. Dean Foods Prods. Co.*, 605 F.2d 380 (8th Cir. 1979); *Brennan's, Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168 (5th Cir. 1979). *But see Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 234–35 (2d Cir. 1977). In the present case, the trial court specifically found McDonald had passed no confidential information to Jones, Grey and Bayley.

Another more recent decision from this court also seems to conflict with the broad rule set forth by the Court of Appeals in *ICO v. ICW*. In *Hoquiam v. Public Empl. Relations Comm'n*, 97 Wn.2d 481, 646 P.2d 129 (1982), after a PERC commissioner withdrew from a pending case because her law firm was representing one of the parties, the court held the firm was not disqualified from continuing to represent that party. The court reasoned the disqualification of the commissioner did not disqualify the firm itself. *Hoquiam*, at 492. Thus, we have not established an absolute rule of disqualification even within the same firm.

Other decisions have also considered as a factor whether the review of the motion for disqualification is made before or after a judgment has been entered in the case. Both *Kurbitz* and *Alpha Inv. Co.* involved interlocutory reviews of pretrial rulings. The Court of Appeals found this distinction crucial in *National Bank of Commerce v. Fountain*, 9 Wn. App. 727, 514 P.2d 194 (1973). The court held reversal of a trial court judgment is not required unless the former client can show he was prejudiced by the attorney's breach of ethics:

> [U]nlike *Kurbitz,* we have the record of the representation of plaintiff's counsel in trial and find no substantial evidence of the utilization of any confidential information acquired by his prior relationship with defendant Fountain.

*National Bank of Commerce v. Fountain,* at 733.

Similarly, in *Ryan v. Ryan,* 48 Wn.2d 593, 295 P.2d 1111 (1956), we held reversal of a trial verdict was unnecessary, even though an attorney who testified for his client should have withdrawn, because the testimony did not affect the verdict.

These considerations lead us to conclude the Court of Appeals erred in reversing the judgment in *ICO v. ICW.* Here, as in *Fountain,* there is no evidence McDonald or Jones, Grey and Bayley used any confidential information obtained from ICO. McDonald could not remember the content of his single meeting with ICO, and further could not have used it because he did not participate in the trial. The trial court found Jones, Grey and Bayley did not use any information from McDonald at trial. ICO has shown no prejudice and, as in *Ryan,* there is no evidence of any effect upon the judgment. The Court of Appeals irrebuttable presumption of prejudice, despite a finding no confidential information was transferred through the cocounsel relationship, and despite the lack of evidence showing an effect upon the judgment, is erroneous and in conflict with prior case law.

## Authority To Review

Even though the Court of Appeals decision may have been erroneous, ICO disputes our ability to review that decision in the present case where review was previously denied by this court, and the initial issue disputed here is the trial court orders upon remand. We disagree; both the court rules and precedent allow such review.

▮ RAP 2.5(c) provides in part:

The following provisions apply if the same case is again before the appellate court following a remand:
. . .
(2) . . . The appellate court may at the instance of a party review the propriety of an earlier decision of the appellate court in the same case and, where justice would best be served, decide the case on the basis of the appel-

late court's opinion of the law at the time of the later review.

This rule allows the Court of Appeals to review the propriety of its own prior decision and logically would allow this court also to review the opinion and the earlier denial of review of that decision.

We have stated the law of the case doctrine does not prevent the court from overruling a previous erroneous decision. In *Greene v. Rothschild,* 68 Wn.2d 1, 402 P.2d 356, 414 P.2d 1013 (1965), the court concluded its prior determination was erroneous and reversed itself. The court stated:

> It is true that we have often said that a decision rendered on a prior appeal, whether "right or wrong," becomes the law of the case. We have examined all such cases which have been disclosed by our research. . . . In none of these cases does it appear that the prior ruling was erroneous, and the expression "right or wrong" was therefore merely dictum.
>
> . . .
>
> Under the doctrine of "law of the case," as applied in this jurisdiction, the parties, the trial court, and this court are bound by the holdings of the court on a prior appeal until such time as they are "authoritatively overruled." . . . Such a holding should be overruled if it lays down or tacitly applies a rule of law which is clearly erroneous, and if to apply the doctrine would work a manifest injustice to one party, whereas no corresponding injustice would result to the other party if the erroneous decision should be set aside.

*Greene,* at 9–10. We therefore have authority to review the Court of Appeals decision if we determine it to be erroneous and that justice would best be served by review of the earlier decision. Here, the earlier decision must be reviewed in order to resolve the present dispute because the issue is the same: whether Jones, Grey and Bayley is disqualified from representing ICW.

## Reimputation to Other Firms

The trial court interpreted the language of the Court of Appeals decision to require not only the continued disqual-

ification of Jones, Grey and Bayley, but also the disqualification of other firms later associated with it. Accordingly, it ordered the disqualification of Edwards and Barbieri in the *ICO v. ICW* case and Schweppe, Krug and Tausend in the FSBIC v. ICO case. We reverse this order as it was based on the erroneous reasoning of the Court of Appeals opinion and it substantially extended the application of the opinion.

Since we rule the Jones, Grey and Bayley firm should not have been disqualified, it inevitably follows the trial court only compounded the error by reimputing the disqualification to other firms. The facts show Edwards and Barbieri and Schweppe, Krug and Tausend could never have acquired confidential information from either McDonald, who had withdrawn 2 years previously and was never associated with the FSBIC v. ICO case, or from Jones, Grey and Bayley, which had never acquired confidential information itself. As FSBIC and ICW observe, the reimputation problem demonstrates one of the weaknesses of the Court of Appeals reasoning, which can result in a series of consecutive disqualifications. If one firm had acquired no confidential information, and yet was disqualified, there would be no rational basis to preclude the disqualification of all subsequent counsel who have also acquired no confidential information. Other jurisdictions have limited disqualification in similar contexts to the boundaries of the firm. *American Can Co. v. Citrus Feed Co.,* 436 F.2d 1125 (5th Cir. 1971) (knowledge of one member of a law firm, imputed to another member of the firm, will not be reimputed to members of an associating firm); *State v. Martinez,* 100 N.M. 532, 673 P.2d 509 (Ct. App. 1983) (defendant in habitual criminal prosecution not entitled to disqualification of defense counsel who shared office space with former associate of prosecutor of defendant on prior charges). We find the arguments against reimputation to the associated firms to be persuasive.

New Rules of Professional Conduct

FSBIC and ICW argue as an alternative that the original judgment should be reinstated due to the enactment of the new Rules of Professional Conduct. They claim the RPC determine the issue of the current disqualification of Jones, Grey and Bayley, contrary to the conclusion of the Court of Appeals. They then assert, since Jones, Grey and Bayley would not now be disqualified, that another trial would only be identical and wasteful, and the trial court should have reinstated its original judgment.

The new rules differ from the former code in identifying specific circumstances in which a lawyer or law firm is disqualified from representing a client. RPC 1.10 provides in part:

> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by rules 1.7, 1.8(c), 1.9, or 2.2.
>
> (b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired confidences or secrets protected by rules 1.6 and 1.9(b) that are material to the matter.
>
> (c) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless:
>
> (1) The matter is the same or substantially related to that in which the formerly associated lawyer represented the client; *and*
>
> (2) Any lawyer remaining in the firm has acquired confidences or secrets protected by rules 1.6 and 1.9(b) that are material to the matter.

(Italics ours.)

The rule recognizes vicarious disqualification should not be so broadly cast as to preclude clients from having a reasonable choice of legal counsel. RPC 1.10(c) would apply in

the present case to allow Jones, Grey and Bayley to represent FSBIC and ICW. McDonald long ago terminated his cocounsel relationship with Jones, Grey and Bayley on the *ICO v. ICW* case. Jones, Grey and Bayley is therefore not prohibited from representing FSBIC or ICW unless a "lawyer remaining in the firm has acquired confidences or secrets . . ." RPC 1.10(c)(2). As mentioned previously, the trial court expressly found McDonald had passed no confidential information to Jones, Grey and Bayley. The rule apparently allows a firm previously disqualified under RPC 1.10(a) or (b) to become qualified later under RPC 1.10(c) by terminating the relationship to the disqualified attorney, where no remaining member of the firm has acquired confidences or secrets of the opposing party. Jones, Grey and Bayley is therefore not disqualified under the Rules of Professional Conduct from representing FSBIC and ICW for the remainder of the litigation.

█ FSBIC and ICW rely primarily on one case, *Jordan v. Jordan,* 132 Ariz. 38, 643 P.2d 1008 (1982) to support their proposition that the trial court should have reinstated the original judgment based upon adoption of the new rules. The opinion in *Jordan,* however, although supportive of the position of FSBIC and ICW, noted "[t]he legislative intent to give retrospective effect to the statute is obvious." *Jordan,* at 44 n.5. We do not believe it is appropriate to confer retroactive effect upon the Rules of Professional Conduct and decline to overrule the Court of Appeals decision by a retroactive application of the new rules. We observe, however, that under our analysis of the RPC the result would be the same in a similar situation occurring in the future.

## II

FSBIC and ICW filed a motion to disqualify Diamond and Sylvester as counsel for Furman and James in these matters, claiming one of the firm's members, Douglas Ruud, had formed the ICW corporation and was also involved as an attorney in the transactions resulting in the lawsuits

here. The trial court rejected the arguments based on insufficient evidence of an attorney–client relationship and waiver of the right to move for disqualification based on delay.

■ The motion was properly denied by the trial court on the basis of waiver alone. The moving parties had reason to know of the existence of the basis for the potential disqualification for several years before they filed their disqualification motion. A failure to act promptly in filing a motion for disqualification may warrant denial of a motion. *See United Nuclear Corp. v. General Atomic Co.,* 96 N.M. 155, 244, 629 P.2d 231 (1980) (and cases cited therein). As one court has stated:

> A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion. This court will not allow a litigant to delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of a case has been completed.

*Central Milk Producers Coop. v. Sentry Food Stores, Inc.,* 573 F.2d 988, 992 (8th Cir. 1978). In light of the overwhelming delay in filing this motion to disqualify, the arguments of FSBIC and ICW on this issue are without merit.

In *ICO v. ICW* we reverse the orders of the trial court that Jones, Grey and Bayley would be disqualified, that the firm of Edwards and Barbieri was disqualified, and the sealing of the working papers of Jones, Grey and Bayley and Edwards and Barbieri. We affirm the order that Diamond and Sylvester should not be disqualified as counsel for ICO. The original judgment in favor of ICW is reinstated.

In FSBIC v. ICO we reverse the orders of the trial court disqualifying Jones, Grey and Bayley and Schweppe, Krug and Tausend from representing FSBIC and reverse the order sealing the work product of the FSBIC law firms. The order that Diamond and Sylvester not be disqualified is

338

affirmed. The entire matter is remanded to the trial court for further action not inconsistent with this opinion.

PEARSON, C.J., UTTER, BRACHTENBACH, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., and HAMILTON, J. Pro Tem., concur.