# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SHANNON C. ADAMSON and NICHOLAS ADAMSON, husband and wife, | No. 72925-0-I |
| Plaintiffs, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| PORT OF BELLINGHAM, a Washington municipal corporation, | |
| Defendant. | |
| PORT OF BELLINGHAM, a Washington municipal corporation, | |
| Appellant, | |
| v. | |
| STATE OF ALASKA, by and through its DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES – ALASKA MARINE HIGHWAY SYSTEM, | |
| Respondent. | FILED: March 14, 2016 |

TRICKEY, J. —The Port of Bellingham and the state of Alaska, through the Alaska Marine Highway System (AMHS), agreed to a lease in 2009 regarding AMHS ferries using the Port of Bellingham's terminal. When an AMHS employee sued the Port of Bellingham for negligently causing injuries to her while working for AMHS, the Port impleaded Alaska based on provisions in the lease. But Alaska, by statute, retains sovereign immunity for any claim that arises out of an injury to a state-employed seaman.

Alaska argues that the Port's claims fall within Alaska's sovereign immunity, which AMHS officials did not have authority to relinquish. The Port maintains that Alaska's sovereign immunity does not apply to third-party suits. The Port's argument contradicts the Alaska statute's plain language. Accordingly, AMHS's act of agreeing to the lease exceeded its authority and is ultra vires. Thus, the Port cannot enforce its claims against Alaska. We affirm the trial court's dismissal of the Port's claims.[1]

## FACTS

In 1988, the Port of Bellingham and the state of Alaska, through AMHS, signed a 20-year lease to allow Alaska to use the Port's terminal for AMHS ferries. The parties executed a new lease in 2009, agreeing that Washington law would govern its construction, validity, performance, and enforcement. The parties also included a provision for the allocation of fault between Alaska and the Port:

> Section 6.1 - Allocation of Fault: In the event a third-party asserts a claim for damages against either Lessor or the state in connection with this lease, the parties agree that either may take those steps necessary for the fact finder to make an allocation of comparative fault between Lessor and the state, in which case the party's liability to the claimant or the other party, if any, will not exceed its proportionate degree of fault.[2]

In 2012, there was an accident involving the passenger ramp connecting the pier to the ferry. The accident injured Shannon Adamson, an AMHS employee who was operating the ramp at the time. Alaska compensated Adamson in accordance with its workers' compensation program. Adamson sued the Port for

---

[1] The Port moved to strike portions of Alaska's supplemental response brief. We deny that motion.
[2] Clerk's Papers (CP) at 50-51.

2

additional damages under a negligence theory. The Port, in turn, impleaded Alaska as a third-party defendant.

The Port alleged five causes of action against Alaska, including negligence under Washington law, negligence under general maritime law, breach of contract, right to allocation of fault under the lease, and general maritime indemnity. Alaska brought a CR 12(b)(6) motion to dismiss the Port's claims. The trial court granted Alaska's motion. The Port moved for reconsideration or clarification, which the court denied. The Port appeals.

## ANALYSIS

The Port appeals the trial court's dismissal of its third-party plaintiff claims against Alaska for failure "to state a claim upon which relief can be granted." CR 12(b)(6). Although the trial court considered documents outside the pleadings, in this case the "basic operative facts are undisputed and the core issue[s] [are] one[s] of law," so we review the trial court's dismissal under the standards for a motion to dismiss. Ortblad v. State, 85 Wn.2d 109, 111, 530 P.2d 635 (1975). Dismissal under this standard is appropriate only "if it appears beyond doubt that the plaintiff cannot prove any set of facts" that would justify recovery. Tenore v. AT&T Wireless Servs., 136 Wn.2d 322, 330, 962 P.2d 104 (1998). We review CR 12(b)(6) motions de novo. Tenore, 136 Wn.2d at 329-30.

The Port also appeals the trial court's denial of its motion for reconsideration, but we need not consider that separately. We review motions for reconsideration for an abuse of discretion. West v. Dep't of Licensing, 182 Wn. App. 500, 516, 331 P.3d 72 (2014), review denied, 339 P.3d 634 (Wash. 2014).

3

Because we "can sustain the trial court's judgment upon any theory established by the pleadings and supported by the proof," it would be impossible for this court to both affirm the trial court's motion to dismiss and hold that the trial court's denial of reconsideration was an abuse of discretion. LaMon v. Butler, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989). If we reversed the trial court's motion to dismiss, the appeal of the motion for reconsideration would be moot. Wood v. Battle Ground Sch. Dist., 107 Wn. App. 550, 574, 27 P.3d 1208 (2001).

## Contract Claims

The Port claims that the allocation of fault provision in its lease obligates Alaska to compensate it for Adamson's injuries. Alaska disputes this interpretation of the lease. But it also argues that, to the extent the lease subjects Alaska to suits for claims arising out of injuries to state-employed seamen, it is ultra vires and unenforceable. We assume for the purpose of this appeal that the lease may require Alaska to compensate the Port for some or all of the damages it incurs as a result of Adamson's injury. We focus instead on whether AMHS had the authority to sign a lease that would allow the Port to sue Alaska on a claim related to the injury of a state-employed seaman.

### Ultra Vires Actions

Alaska argues that it has withdrawn its waiver of sovereign immunity for all claims arising out of injuries to state-employed seamen. The Port argues that this withdrawal was limited to cases brought by the injured employees, and does not apply to suits by third parties.[3] Because the plain language of the statute does not

---

[3] The Port does not claim that Alaska withdrew its sovereign immunity in the lease itself, only through the statute.

support the Port's interpretation, we agree with Alaska.

When public officials enter into contracts that are outside the scope of their authority, the contracts are void and unenforceable under the ultra vires doctrine. Noel v. Cole, 98 Wn.2d 375, 378, 655 P.2d 245 (1982) (superseded by statute on unrelated grounds). An agreement may be ultra vires because the substance of the contract was outside of the agent's authority, or because the agent failed to follow statutorily required procedures for entering into the contract. Noel, 98 Wn.2d at 379.

Here, Alaska's constitution authorizes its legislature to establish the limits of sovereign immunity. ALASKA CONST. art. II, § 21. The Alaska legislature provided a limited waiver of sovereign immunity by statute for most tort and contract claims. AS 09.50.250. But the state of Alaska withdrew that waiver of sovereign immunity for claims arising out of injuries to state-employed seamen in 2003:

> A person or corporation having a contract, quasi-contract, or tort claim against the state may bring an action against the state in a state court that has jurisdiction over the claim. . . . However, an action may not be brought if the claim
>
> . . .
>
> (5) arises out of injury, illness, or death of a seaman that occurs or manifests itself during or in the course of, or arises out of, employment with the state; AS 23.30 provides the exclusive remedy for such a claim, and no action may be brought against the state, its vessels, or its employees under the Jones Act (46 U.S.C. 30104–30105), in admiralty, or under the general maritime law.

AS 09.50.250.

When the meaning and language of a statute is clear, this court gives "effect to that plain meaning." TracFone Wireless, Inc. v. Dep't of Revenue, 170 Wn.2d

273, 281, 242 P.3d 810 (2010).

The statute's plain language indicates a broad exclusion of all claims that arise out of injuries to state-employed seamen. There is no language in the statute that limits its scope only to those claims brought by injured seamen. The statute indicates that chapter 23.30 AS, Alaska's Workers' Compensation Act (AWCA), will be the exclusive remedy for all these claims. The AWCA specifies that the no-fault compensation provided to workers through AS 23.30.045 is the exclusive remedy for an employee, or "anyone otherwise entitled to recover damages from the employer or fellow employee at law or in admiralty on account of the injury or death." AS 23.30.045, .055. Therefore, Alaska's sovereign immunity bars all claims that arise out of injuries to Alaska-employed seamen.

While the legislative history cited by the Port suggests that the Alaska legislature's main concern was eliminating injured employees' claims under maritime law, the statute's plain language provides a much broader exclusion. It is improper for this court to examine material "outside the statute" when the statute's language is unambiguous. Cerrillo v. Esparza, 158 Wn.2d 194, 203-04, 142 P.3d 155 (2006).

Here, no one disputes that Adamson is a state-employed seaman or that she suffered her injury within the scope of her employment with Alaska. Thus, Adamson's injury is the type of injury for which Alaska withdrew its waiver of sovereign immunity.

Adamson's injury is the source of all the Port's claims against Alaska. The Port brought five causes of action against Alaska. The claims were for negligence

under Washington law, negligence under general maritime law, breach of contract, right to allocation of fault under the lease, and general maritime indemnity. In its third-party complaint, the Port explicitly premised Alaska's liability to the Port for each of those claims upon a finding that the Port was liable to Adamson.

Accordingly, Alaska's sovereign immunity would bar all five of the Port's claims. AMHS officials had no authority to subject Alaska to suits for which the legislature retained Alaska's sovereign immunity. Any agreement by AMHS on behalf of Alaska to the contrary is ultra vires and thus void and unenforceable.

*Equitable Estoppel*

The Port argues that, even if the lease was ultra vires, Alaska is equitably estopped from barring the Port's claims. We reject this argument because equitable estoppel is not available when the inconsistent act was substantively ultra vires.

"The State does not 'act' and will not be held estopped based on the ultra vires acts of its officers." Board of Regents of Univ. of Wash. v. City of Seattle, 108 Wn.2d 545, 552, 741 P.2d 11 (1987). "[E]stoppel may not be asserted to enforce the promise of one who had no authority to enter into that undertaking on behalf of the state." State v. Nw. Magnesite Co., 28 Wn.2d 1, 26, 182 P.2d 643 (1947). But courts draw a line between acts that are substantively ultra vires and those that are procedurally ultra vires. Finch v. Matthews, 74 Wn.2d 161, 172, 443 P.2d 833 (1968). Acts are procedurally ultra vires when the agents acted within their powers but exercised those powers "in an irregular manner or through unauthorized procedural means." Finch, 74 Wn.2d at 172. Courts may apply the

7

doctrine of equitable estoppel to procedurally ultra vires acts. Finch, 74 Wn.2d at 171. "The distinction between procedural irregularity and a substantive lack of authority is justified by the fact that in the latter case, the agency lacks the power to do the act in *any* manner." Noel, 98 Wn.2d at 381 n.3.

An act may be procedurally ultra vires when an agency has the authority to commit the act but ignores a required procedure. In Noel, the Department of Natural Resources (DNR) agreed to sell timber without conducting an environmental impact study. 98 Wn.2d at 381. DNR unquestionably had the authority to contract to sell timber, but the act was procedurally ultra vires because state law required DNR to prepare an environmental impact statement first. Noel, 98 Wn.2d at 381.

Here, AMHS lacked the substantive authority to subject Alaska to suit for this type of claim. There was not any manner in which AMHS was authorized to withdraw Alaska's sovereign immunity. Therefore, Alaska is not estopped from withdrawing from a commitment that purports to do so.

Accordingly, the Port cannot recover from Alaska based on any obligations in the lease. We affirm the trial court's dismissal of those claims.

Non-Contract Claims

The Port appeared to concede at oral argument that, despite bringing negligence claims directly against Alaska, its claims against Alaska actually sound in contract. The Port is correct. The Port claims that any damages it owes to Adamson were caused by Alaska's breach of its duties to the Port "under the

8

[l]ease, general maritime law, and/or Washington common law."[4] But the Port never argues to this court that Alaska owes it any duties that do not arise from the lease. And it only seeks a judgment against Alaska in the event that Adamson obtains a judgment against the Port. Additionally, in its reply brief, the Port withdrew its claim that there was admiralty jurisdiction over this action, thereby, presumably, indicating it was withdrawing its maritime claims against Alaska.

Given the resolution of this appeal, we do not reach the Port and Alaska's disputes over the maritime character of the underlying tort and the construction of Washington's Industrial Insurance Act, Title 51.

Affirmed.

Trickey, J

WE CONCUR:

Cox, J.

---

[4] CP at 24-25.