IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| VICEROY GROUP, LLC, a Washington limited liability company, and JEFFREY WYSONG, an individual,<br><br>      Respondents,<br><br>    v.<br><br>TOK, LLC, a Washington limited liability company, and SAMUEL BURKE, an individual,<br><br>      Appellants. | No. 80573-8-I<br>(consolidated with 80710-2-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — This case arises from an arbitration dispute between the co-owners of a cannabis retail store. Samuel Burke was the sole owner of Tok LLC, an entity that was granted a cannabis retail license in Seattle. The Washington State Liquor Control Board (LCB) issued a decision approving Tok's request to allow Jeffrey Wysong's company, Viceroy Group LLC, to become a co-owner of Tok. After a dispute between Burke and Wysong, but before Viceroy became a co-owner of Tok, Burke appealed this decision to the LCB on behalf of Tok. Viceroy asked the arbitrator whom the parties had used to resolve their earlier dispute to intercede, and the arbitrator ordered Burke to withdraw his LCB appeal. Burke appealed the arbitration awards to the superior court. The superior court confirmed the arbitrator's awards, denied Burke's motion to vacate the awards, denied Burke's motion for reconsideration, and granted attorney fees

Citations and pin cites are based on the Westlaw online version of the cited material.

to Viceroy. Burke appealed to this court, and Viceroy moved to disqualify Burke and Tok's counsel. Viceroy also requests attorney fees on appeal.

We deny Viceroy's motion to disqualify because it would not be equitable to disqualify counsel at this late stage. However, because Burke did not establish that the arbitrator exceeded their authority, either by deciding issues outside the scope of their jurisdiction or by committing an error of law, we affirm the trial court's orders confirming the arbitration awards and grant Viceroy attorney fees on appeal.

## FACTS

In July 2014, after winning a spot in Seattle's lottery for the issuance of cannabis retail licenses, Burke formed Tok to operate a cannabis retail store. In 2015, Burke began negotiations with Wysong to sell a 50 percent interest in Tok contingent on the LCB approving Tok for a retail license. To acquire the interest in Tok, Wysong formed Viceroy Group with Wysong as its sole member.

Burke and Viceroy entered into two agreements: the Sale of LLC Interest and Option Agreement (Sale Agreement) and the Tok Operating Agreement (Operating Agreement). The Operating Agreement specified that Burke and Viceroy would be 50-50 owners of Tok and that Burke and Wysong would be the company's original managers. It gave managers the power to "[o]btain[ ] and maintain[ ] all necessary governmental permits and approvals," "[r]etain[ ] and coordinat[e] the services of all attorneys . . . as may be reasonably necessary or appropriate," and "[p]erform[ ] all other day-to-day business functions and exercis[e] all other administrative rights" to carry out Tok's business in

2

accordance with the agreement.  However, it also required both managers to agree before retaining attorneys if the expected attorney fees were over $5,000 in a year and before doing "any act in contravention of" the Operating Agreement.

Both the Sale Agreement and the Operating Agreement were drafted by Wysong's attorney and contain identical arbitration clauses that provide:

> All disputes concerning this Agreement shall be settled by binding arbitration, before one arbitrator . . . The arbitrator is authorized to grant injunctive relief and/or specific performance in addition to monetary relief. The arbitrator hereby is instructed to interpret and enforce this Agreement in strict accordance with its terms, and in accordance with Washington law.

The agreements also provided that following the issuance of an award from the arbitrator, the "unsuccessful party . . . shall pay to the successful party all costs and expenses, including, without limitation, reasonable attorneys' fees."

After entering into the agreements, Burke retained a lawyer who reviewed them.  The lawyer informed Burke that the Sale Agreement violated Washington's cannabis regulations,[1] because it did not require Wysong to be vetted by the LCB before becoming an owner of Tok.  Burke was concerned that violation of the regulations put Tok's eligibility for a cannabis retail license in jeopardy.

In November 2015, the LCB issued a license to Tok, enabling the company to open its retail store.  However, the parties were still disputing the validity of the agreements.  In February 2016, Burke submitted a demand for

---

[1] See WAC 314-55-120 (requiring board approval prior to ownership changes).

arbitration asking the arbitrator to rule on the validity and enforceability of the agreements. Burke and Wysong stipulated that the arbitrator "need not rule on the issue of whether or not Mr. Wysong can be vetted and approved by the LCB" and that the LCB could "make that determination on its own" if the arbitrator determined that the agreements were enforceable.

After a three-day hearing in June 2017, the arbitrator concluded that the agreements were valid and enforceable. The arbitrator noted the parties' stipulation "that the vetting and approval of Wysong and Viceroy LLC is not part of this arbitration and will be determined by what the [LCB] ultimately decides." The arbitrator determined that as prospective LLC members, Wysong and Viceroy were effectively partners of Burke and Tok and "therefore owe[d] each other fiduciary duties consistent with the terms of the LLC agreements once implemented." They ordered the parties to cooperate in good faith to submit an application to the LCB to approve Wysong and Viceroy as owners and to reasonably cooperate during the vetting process. Finally, they retained jurisdiction "to the extent necessary to complete the [dispute's] adjudication."

Burke submitted the change in ownership form in January 2018. However, Burke had learned information during discovery for the arbitration process that suggested Wysong had violated LCB regulations, and after the LCB began its investigation of Wysong and Viceroy, he provided this information to the LCB investigator. The information Burke provided led the investigator to determine that Wysong had previously violated Washington's cannabis regulations by misrepresenting his personal criminal history, finances, and

ownership interest in another company to LCB. Despite these determinations, on November 27, 2018, the LCB approved the application, which allowed Viceroy and Wysong to become co-owners of the cannabis business. Concerned by the effect that Wysong's misrepresentations could have on Tok's license, Burke, on behalf of Tok, appealed the LCB decision on December 12, 2018. On January 14, 2019, he submitted a request to the Office of Administrative Hearings (OAH) for a hearing to pursue the LCB appeal.

On January 17, 2019, unaware of Burke's appeal, Viceroy paid Burke the full amount owed and became a 50 percent owner of Tok. Burke's appeal proceeded and after several months, Viceroy discovered the appeal and moved to intervene in the proceedings before the Office of Administrative Hearings. Viceroy also asked the arbitrator to prohibit Tok from taking any further action in the appeal without Wysong's permission and to require Tok's counsel to withdraw, as well as to produce financial information about the counsel's work on the appeal.

In awards dated July 26 and 30, 2019, the arbitrator mostly granted Viceroy's requests, ordering Burke to immediately withdraw Tok's LCB appeal, authorizing Wysong to do so if Burke did not, and declaring the LCB appeal to be "voided." The arbitrator also ordered that Burke provide Viceroy with billing and payment records for legal services incurred during the appeal and make no further payments for legal services for the appeal. The arbitrator denied Viceroy's request to disqualify Burke's counsel, noting that if Viceroy wished to pursue this relief, "further briefing [was] required to establish [the] Arbitrator's

authority to order such relief."

Viceroy filed a motion to clarify the July awards, which the arbitrator granted on September 20, 2019. The arbitrator wrote a letter, which was "not intended to amend the relief previously granted" and explained in more depth their reasoning for the award. Burke filed a motion in superior court to vacate the July 2019 awards and the September 2019 letter, which he characterized as a modification of the award. Viceroy, meanwhile, filed a motion to confirm the arbitration awards. The superior court confirmed the awards and denied Burke's motion. Burke filed a motion to reconsider, which the superior court denied. Burke appeals.

ANALYSIS

On appeal, Burke contends that the trial court erred in confirming the arbitrator's awards and denying the motions to vacate and to reconsider. Viceroy moves for the disqualification of Burke's attorney, asks us to affirm the trial court, and requests attorney fees. We deny Viceroy's motion for disqualification because Viceroy's delay in pursuing this relief would make disqualification at this stage inequitable. Furthermore, because Burke has not met his statutory burden to justify vacating the arbitration awards, we affirm the trial court and award Viceroy attorney fees on appeal.

Motion To Disqualify

Viceroy asks this court to disqualify Burke and Tok's counsel, Nathan Paine. Viceroy contends that Paine's actions in representing both Burke and Tok in this case and in the LCB appeal violate several of the Washington Rules of

Professional Conduct.[2]  Specifically, Viceroy alleges that Paine's representation of Tok is hindered by his representation of Burke, preventing Paine from meeting his duties to Viceroy as a 50 percent owner of Tok.  While Viceroy raises legitimate issues concerning Paine's representation, because Viceroy did not pursue the issue during arbitration and did not raise it below, we deny the motion.

Under RAP 7.3, this court "has the authority to . . . perform all acts necessary or appropriate to secure the fair and orderly review of a case."  This can include inquiring into violations of the Rules of Professional Conduct.  In re Marriage of Wixom, 182 Wn. App. 881, 897-98, 332 P.3d 1063 (2014).  However, the court should "'not allow a litigant to delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of a case has been completed.'"  First Small Bus. Inv. Co. of Cal. v. Intercapital Corp. of Or., 108 Wn.2d 324, 337, 738 P.2d 263 (1987) (quoting Central Milk Producers Coop. v. Sentry Food Stores, Inc., 573 F.2d 988, 992 (8th Cir. 1978)).  Accordingly, where the parties have had "reason to know of the existence of the basis for the potential disqualification for several years before they filed their disqualification motion," the court may properly conclude that they waived that issue.  Small Bus., 108 Wn.2d at 337.

Here, Paine's advocacy is directly at odds with Viceroy's interests and seems to create at least a significant risk that his representation of Tok would be materially limited by his responsibilities to Burke, which creates a concurrent

---

[2] Viceroy contends that Paine's conduct implicates RPCs 2.1, 1.7, 1.13(g), 1.15A, and 1.8(f).

conflict of interest under RPC 1.7(a)(2).  Although this is concerning, we decline to disqualify Paine at this point because doing so would not "secure the fair and orderly review" of this case.  RAP 7.3.

Since at least February 2016, Paine has represented Burke and Tok in the arbitration against Viceroy and Wysong.  Viceroy knew this and has known since at least March 2019 that Paine was representing Tok in the LCB appeal.  Viceroy asked the arbitrator to disqualify Paine, and the arbitrator denied the request without prejudice, inviting Viceroy to provide further briefing if it wished to pursue the issue.  Viceroy did not provide further briefing and also did not raise the issue before the superior court.  Furthermore, our commissioner granted a stay of the LCB appeal against Viceroy's wishes, noting their expectation that this case could be resolved expeditiously, therefore minimizing the time period of the stay.  Granting Viceroy's motion now would prevent the case from being resolved expeditiously.  Under these circumstances, we exercise our discretion to deny the motion.  Small Bus., 108 Wn.2d at 337 ("A failure to act promptly in filing a motion for disqualification may warrant denial of a motion.").

Viceroy disagrees and contends that it raises this issue now because it learned new facts after the superior court's confirmation, including that counsel for Tok was purportedly holding a large amount of Tok's funds in trust.  Tok heavily disputes these facts and provides declarations to show their falsity.  Given that the appellate court is not ordinarily a trier of fact,[3] we decline to address this issue and decline to grant Viceroy's motion.

---

[3] See, e.g., RAP 9.11 (limiting admission of new evidence on review).

Review of Arbitrator's Awards

Burke contends that the arbitrator exceeded their power by deciding issues that the parties had not agreed to arbitrate and by erring in their application of the law, and that the awards should be vacated under RCW 7.04A.230(1)(d) and (e). Accordingly, Burke asks us to reverse the superior court's orders confirming the awards and awarding attorney fees, denying the motion to vacate, and denying the motion to reconsider. Because a court must confirm an award if it denies a motion to vacate, we need only address whether the motion to vacate was properly denied, and if so, we may conclude that the court was correct to confirm the award. RCW 7.04A.230(4) ("If a motion to vacate an award is denied and a motion to modify or correct the award is not pending, the court shall confirm the award."). Because Burke did not meet his burden to show that the arbitrator exceeded the scope of their authority, we disagree with Burke and affirm the superior court.

*Standard of Review*

Our courts encourage arbitration as a simpler, faster, and less expensive alternative to litigation. Mainline Rock & Ballast, Inc. v. Barnes, Inc., 8 Wn. App. 2d 594, 608, 439 P.3d 662, review denied, 193 Wn.2d 1033 (2019). To prevent parties from frustrating this goal by relitigating arbitration awards, we afford significant deference to arbitrators. Boyd v. Davis, 127 Wn.2d 256, 262-63, 897 P.2d 1239 (1995). We will vacate or modify an award only if it violates one of the statutory grounds listed in RCW 7.04A.230(1)(a)-(f). None of these grounds involve evaluating the evidence underlying the case. See RCW 7.04A.230(1)(a)-

(f). Accordingly, we do not evaluate the merits of the case or reexamine the evidence. Broom v. Morgan Stanley DW Inc., 169 Wn.2d 231, 239, 236 P.3d 182 (2010).

When considering whether to vacate an award because the "arbitrator exceeded the arbitrator's powers," under RCW 7.04A.230(1)(d), we consider whether the arbitrator decided a nonarbitrable issue or whether there is an error of law on the face of the award. Agnew v. Lacey Co-Ply, 33 Wn. App. 283, 288, 654 P.2d 712 (1982); Broom, 169 Wn.2d at 239-40. "The facial legal error standard is a very narrow ground for vacating an arbitral award, and courts may not search the arbitral proceedings for any legal error." Mainline, 8 Wn. App. 2d at 609. The party seeking to vacate the award bears the burden of establishing the error and establishing prejudice resulting from the error. Mainline, 8 Wn. App. 2d at 609; Expert Drywall, Inc. v. Ellis-Don Const., Inc., 86 Wn. App. 884, 888, 939 P.2d 1258 (1997).

*Review of July 2019 Awards*

Burke contends that the arbitrator's July 2019 awards—ordering Burke to withdraw his LCB appeal, to disclose financial information to Viceroy, and to discontinue paying counsel with Tok funds—should be vacated because they exceed the arbitrator's authority and decide issues outside of the scope of the parties' agreements. We address Burke's contentions in turn, applying the deferential standard described above.

Burke first contends that the arbitrator exceeded the limits on their authority under both RCW 7.04A.230(1)(d) and (e) by failing to strictly interpret

and enforce the terms of the agreements. To address this issue, we "look to the contract to identify the issues the parties agreed to arbitrate and, therefore, the scope of the arbitrator's authority." Morrell v. Webush Morgan Sec., Inc., 143 Wn. App. 473, 485 n.4, 178 P.3d 387 (2008).

The arbitration clause in this case provided that "[a]*ll disputes concerning this Agreement*" would be settled by an arbitrator, who would "interpret and enforce this Agreement in strict accordance with its terms, and in accordance with Washington law."[4] This dispute fell within the scope of the arbitration clause, because Burke's appeal of the LCB decision could potentially undermine the validity of the agreements between the parties, and Viceroy's position was that the LCB appeal violated these agreements. The arbitrator also noted their "tentative conclusion" that "Burke's secret pursuit of the appeal was undertaken . . . to thwart the outcome of the arbitration," i.e., the arbitrator's conclusion that the agreements were enforceable. Finally, the arbitrator was subject to the American Arbitration Association (AAA) Commercial Arbitration Rules, which provide that "[t]he arbitrator shall have the power to rule on [their] own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."[5] Accordingly, we conclude that the arbitrator had authority to address the subject matter of this dispute.

---

[4] (Emphasis added.)

[5] Am. Arbitration Ass'n, Commercial Arbitration Rules and Mediation Procedures R-7(a) at 13 (Oct. 1, 2013), https://adr.org/sites/default/files/Commercial%20Rules.pdf [https://perma.cc/G5RH-BXRY].

Relatedly, Burke contends that the arbitrator exceeded their authority by deciding an issue that the parties had already stipulated to and which was therefore "beyond the scope of his charge." However, the parties stipulated only that the arbitrator "need not rule on the issue of whether or not Mr. Wysong can be vetted and approved by the LCB. The parties have agreed that the LCB can make that determination on its own."[6] In accordance with this stipulation, and contrary to Burke's contention, the arbitrator noted that the LCB had already made their determination to approve Wysong. The arbitrator did not rule on whether Wysong could be approved by the LCB. Instead, the arbitrator addressed whether Burke could appeal the decision on behalf of Tok, without informing Wysong, when Viceroy was already a member of Tok and Wysong was a manager. This limited scope of the arbitrator's decision is evidenced by the fact that the arbitrator did not make any determinations on behalf of the LCB and instead only limited Burke's actions with respect to the appeal. Accordingly, we conclude that the arbitrator did not decide an issue already addressed by the parties' stipulation and therefore did not exceed their authority in this respect.

Next, Burke contends the arbitrator exceeded their authority by reasserting jurisdiction over a new dispute after their jurisdiction had been extinguished. Burke cites the common law doctrine of *functus officio*, which

---

[6] Burke relies on the arbitrator's characterization of the stipulation, which stated that "the vetting and approval of Wysong and Viceroy LLC is not part of this arbitration and will be determined by what the [LCB] ultimately decides." However, even if this were the language of the stipulation, which it is not, the arbitrator's decision still focuses on Burke's actions in the appeal in relation to his contractual duties and does not direct the LCB to reach a certain outcome.

provides that "'once an arbitrator has made and published a final award[,] his authority is exhausted and he . . . can do nothing more in regard to the subject matter of the arbitration.'" Int'l Bhd. of Teamsters, Local 631 v. Silver State Disposal Serv., Inc., 109 F.3d 1409, 1411 (9th Cir. 1997) (quoting McClatchy Newspapers v. Ctr. Valley Typographical Union No. 46, 686 F.2d 731, 734 (9th Cir. 1982)). Similarly, the AAA rules provide that "[t]he arbitrator is not empowered to redetermine the merits of any claim already decided."[7]

Here, however, the arbitrator did not redetermine the merits of a final award. Their early awards finding the agreements to be enforceable noted that the arbitrator would "retain[ ] jurisdiction to the extent necessary to complete the adjudication" of the dispute for the purposes of ensuring Viceroy received the benefit of its bargain, specifically in the context of profit distributions. In their award on June 24, 2019, the arbitrator noted that "[r]espondents' petition for attorneys' fees and costs shall be deferred until the case is fully resolved." Burke's contention that this award fully resolved the issues before the arbitrator, except for attorney fees, is inconsistent with the arbitrator's statement. Moreover, even if the arbitrator had fully resolved the issues before them, Viceroy would still have the right under the arbitration clause to arbitrate its claim that Burke's LCB appeal was a new violation of the agreements. Accordingly, we conclude that the arbitrator's decision did not redetermine the merits of a final award and therefore did not exceed their authority.

Burke next contends that the arbitrator exceeded their authority by

---

[7] Commercial Arbitration Rules and Mediation Procedures R-50, at 28.

13

"voiding" the OAH appeal, thereby interfering with the authority of an independent tribunal. He contends that an act cannot be voided merely because it breaches an agreement. However, the arbitrator's award does not interfere with the OAH's authority. The award states, "Burke's actions on behalf of Tok to appeal the [LCB] approval of Viceroy/Wysong . . . are hereby voided. Burke shall direct the [LCB] that Tok's appeal is withdrawn and if he fails to do so and verify doing so immediately upon receipt of this award and order, then Viceroy/Wysong is authorized" to do so.[8] The language of the award illustrates that the arbitrator was not in fact directing the OAH to do anything. Instead, the award only affected Burke's actions. In context, it does not appear that the term "voided" is intended to have any legal meaning outside of the arbitrator's order for Burke to withdraw the appeal. The parties' agreement empowered the arbitrator to "grant injunctive relief and/or specific performance in addition to monetary relief." Despite the arbitrator's characterization that they were "voiding" the appeal, they merely granted the relief permitted by the arbitration clause. Accordingly, the order did not exceed the arbitrator's power.

Burke disagrees and contends that the termination of the appeal "presents an unacceptable risk of cancellation of Tok's cannabis license." While this contention is relevant to the merits of the arbitrator's decision, it does not affect the validity of the arbitrator's decision, which is the question before us. Accordingly, we conclude that the arbitrator was acting within the scope of their authority in ordering Burke to withdraw the appeal.

---

[8] (Capitalization omitted.)

Burke next contends that the arbitrator made several errors of law, apparent on the face of the awards, and that we must therefore vacate the awards. We disagree and discuss each assigned error in turn.

Burke points to the arbitrator's passing reference to Burke's "fiduciary obligation to deal openly and honestly with his co-member/manager" as a facial error of law on the basis that Burke had no such fiduciary duty. Under RCW 25.15.038(1)(a), LLC managers only have the fiduciary duties of care and loyalty with respect to the company and its members. The duty of care requires "refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law in the conduct and winding up of the limited liability company's activities." RCW 25.15.038(3)(a). Furthermore, RCW 25.15.038(6) provides that "the . . . manager's duties may be modified, expanded, restricted, or eliminated by the provisions of a limited liability company agreement."

Here, there is no facial error of law because there are multiple possible legitimate bases for the arbitrator's statement. The arbitrator may have concluded that Burke had violated his duty of care by not being open and honest about the appeal and therefore failing to comply with a term of the Operating Agreement requiring collaboration between the managers.[9] Alternatively, the arbitrator may have concluded that the Operating Agreement expanded Burke's fiduciary duties. Because the facial legal error standard is a "very narrow ground

---

[9] For instance, one provision of the Operating Agreement requires the managers to agree before spending more than $5,000 on legal fees.

for vacating an arbitral order," and we "may not search the arbitral proceedings" to determine whether there is a legal error, we will not reverse on these grounds where there are tenable grounds for the arbitrator's statement. Mainline, 8 Wn. App. 2d at 609. Accordingly, the arbitrator's passing reference to fiduciary duties does not establish that they misapplied the law.

Burke next contends that the arbitrator erred by applying the ultra vires doctrine to the dispute, despite common law actions not applying to LLCs.[10] However, in context it appears that the arbitrator did not mean to apply ultra vires as a legal doctrine. Ultra vires is generally invoked by courts to void contracts, commonly in the context of government contracts. See Adamson v. Port of Bellingham, 192 Wn. App. 921, 926, 374 P.3d 170 (2016) ("When public officials enter into contracts that are outside the scope of their authority, the contracts are void and unenforceable under the ultra vires doctrine."). Here, as discussed above, the arbitrator did not actually void anything. Instead, it appears most likely that the arbitrator was simply using the dictionary definition of ultra vires: "beyond the scope or in excess of legal power or authority." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2480 (2002). The arbitrator's subsequent explanation of the award supports this interpretation: "[b]y stating that Burke's actions were 'ultra-vires' the intention was to indicate that the continuation of the [LCB] appeal was not in accordance with the TOK LLC operating agreement." Accordingly, we conclude that Burke did not meet his burden to show that this

---

[10] See Chadwick Farms Owners Ass'n v. FHC, LLC, 166 Wn.2d 178, 206 n.12, 207 P.3d 1251 (2009) ("Because an LLC is a creature of statute, accrued actions arising with respect to an LLC cannot spring from the common law.").

was a facial error of law.

Finally, we also reject Burke's claim that the arbitrator erred in referring to Burke's duty of good faith and fair dealing. Specifically, Burke claims that the arbitrator treated this duty as a "free-floating" duty, rather than connecting it to a specific contractual term as required by Washington law. "There is in every contract an implied duty of good faith and fair dealing. This duty obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." Badgett v. Sec. State Bank, 116 Wn.2d 563, 569, 807 P.2d 356 (1991). Burke is correct that the duty exists in relation to the terms of the contract, that is, "it requires only that the parties perform in good faith the obligations imposed by their agreement." Badgett, 116 Wn.2d at 569. Here, the arbitrator concluded that Burke likely pursued the LCB appeal in bad faith. However, the arbitrator did not claim that the duty of good faith was free floating, and we need not look to the agreements to speculate which specific terms the duty was connected to. Because review for facial errors is limited to the face of the award, and it is not a facial error to refer to a legitimate and existing duty, Burke again failed to meet his burden to establish error.[11]

Because Burke failed to meet his burden to show the arbitrator exceeded their authority, either by deciding issues outside the scope of the parties'

---

[11] However, there are multiple provisions that might support the arbitrator's conclusion. These range from general requirements to not take acts in contravention of the agreement, which provides that Viceroy and Burke are co-owners, to specific requirements, such as "[m]anagers will not employ or permit another to employ such funds or assets in any manner except for the exclusive benefit of the Company."

agreement, violating the arbitral rules, or committing a facial error of law, we affirm the trial court's confirmation of the arbitrator's awards.

*Review of September 2019 Letter Clarifying July Awards*

Burke also contends that the arbitrator's September 2019 letter granting Viceroy's motion to clarify should be vacated and that the trial court erred by denying Burke's motion to reconsider on this basis. We disagree and affirm the trial court.

RCW 7.04A.200(1)(c) provides that a party may move for the arbitrator to modify an award in order to clarify it. This motion must be made within 20 days after the party receives notice of the award. RCW 7.04A.200(2). Such a modification is subject to the same grounds for vacating as other arbitration awards. RCW 7.04A.200(5).

In this case, Viceroy's motion for clarification came more than 20 days after the entry of the arbitrator's July awards, and so we agree that it would be error for the arbitrator to modify their awards. However, the arbitrator specified that the letter was "in response to the pending Motion to Clarify and is not intended to amend the relief previously granted." The mere fact that RCW 7.04A.200 allows an arbitrator to modify an award in order to clarify it does not mean that every clarification of an award is a modification. Indeed, the arbitrator's letter discussed the reasoning behind the prior awards but did not change any provisions of the prior awards. Because the letter did not modify the awards, we conclude that the arbitrator's September letter was not a modification and therefore not an award that must be vacated or confirmed. Accordingly, we

affirm the superior court's denial of the motion to reconsider.

Attorney Fees on Appeal

As a final matter, Viceroy requests attorney fees on appeal. Because the agreements mandate an award of attorney fees, we grant its request.

Under RCW 4.84.330, where a contract provides that a party seeking to enforce the provisions of the contract is entitled to reasonable attorney fees, the court must award these fees. Singleton v. Frost, 108 Wn.2d 723, 729, 742 P.2d 1224 (1987) ("There is no authority to support an interpretation of RCW 4.84.330 other than as mandating an award of reasonable attorney's fees to the prevailing party where a contract so provides.").

Here, both the Sale Agreement and the Operating Agreement provide that the "unsuccessful party to any arbitration proceeding or to any court action that is permitted by this Agreement shall pay to the successful party all costs and expenses, including, without limitation, reasonable attorneys' fees." Because Viceroy and Wysong are the prevailing parties, they are entitled to attorney fees on appeal.

For the foregoing reasons, we deny Viceroy's motion to disqualify Burke's attorney but affirm the trial court's orders and grant reasonable attorney fees on

appeal to Viceroy.

_____

WE CONCUR:

_____   _____